HOWARD D. BAIRD, Plaintiff, *v.* HERBERT KRANCER and Another, Defendants.

Supreme Court, New York County, November 14, 1930.

*Tolbert, Ewen & Patterson* [*W. Tolbert* of counsel], for the plaintiff.

*T. E. McEntegart* [*W. D. Reed* of counsel], for the defendant.

COTILLO, J. Plaintiff sues to recover a brokerage of $7,500 for services in aiding defendants to secure a building or construction loan for an apartment house.

The plaintiff sets forth his claim in the form of two causes of action.

The first cause of action is based on an alleged written contract, and alleges that plaintiff's services consisted of introducing one of the defendants to persons who were in a position to furnish funds for the erection and financing of a proposed apartment house.

Paragraph 1 of the complaint specifically states: " In assisting the said defendant in procuring contracts and offers for such financing," and then sets forth an agreement by one of the defendants which is marked Exhibit A annexed to the complaint.

The second cause of action is for the fair and reasonable value of the services, which are alleged to be:

*First.* " In assisting him in procuring offers of funds and for the financing of the erection of an apartment house; "

*Second.* " In procuring introductions to the said defendant of persons ready, willing and able to furnish such funds and to finance the erection thereof; " and

*Third.* " Obtaining a contract therefor."

The complaint further states that the said defendant Herbert Krancer refused to accept such contract and such offers. The plaintiff further admits that the loan was never obtained. (See Bill of Particulars, ¶ IV.)

Plaintiff further states that " the proposed loan was to be secured by mortgage upon the lands and building to be erected thereon." (Plaintiff's Bill of Particulars, ¶¶ IV and V.)

Motion has been made to dismiss the complaint at the end of plaintiff's case and on the argument the plaintiff's attorney contends that he is not seeking to recover the $7,500 for services in *negotiating* the loan but simply for introducing defendant to two persons who were ready, willing and able to make the loan. The plaintiff contends further that he did not need to be a licensed broker to recover for introducing the defendants.

The defendant on the other hand claims it appears sufficiently from the complaint and the bill of particulars that

(a) The plaintiff did much more than merely introduce the defendant, and

(b) That this was a clean-cut question of law that must be decided by the court upon the exhibits, the contract, correspondence and all the evidence produced by the plaintiff.

The court feels that the plaintiff's claim that he was to be paid a brokerage of $7,500 simply for two introductions is contradicted by his own verified complaint and verified bill of particulars. If he was to be paid simply for introductions why did he allege in his complaint that his services also consisted in assisting said defendants in procuring contracts and offers for such financing, etc.? In the second cause of action that the services consisted in assisting him in procuring offers of funds and for the financing of erection of an apartment house, and later, in obtaining the contract therefor. (See ¶ III.)

It seems to me that this is just what the average broker does; he introduces his client to the loaning institution and then assists the client in persuading the loaning institution to see what it will loan on the property and if plaintiff was not a real estate broker as it is admitted in this case, why did he refer to his compensation

as brokerage in Exhibit A annexed to the complaint? If plaintiff's duty was only to introduce the defendant why does he allege that said defendant refused to accept such contracts and such offers?

The court is constrained from the evidence in the case submitted by the plaintiff to arrive at the conclusion that this was an action for real estate brokerage as contemplated by section 440 of the Real Property Law (added by Laws of 1922, chap. 672, as amd. by Laws of 1927, chap. 107) and it was clearly the intent of the Legislature to protect dealers in real estate from unlicensed persons who acted as brokers that the statute was enacted. To interpret the statute so as to permit men under the guise of an alleged introduction to evade section 440 would simply nullify the statute and would expose the public by judicial interpretation to the very evils that the Legislature and the reputable brokers of the State sought to protect it from.

The plaintiff somewhat stresses the *Seckendorff* case, which was decided by the Appellate Division on April 11, 1930 (229 App. Div. 318), and while the court has the highest regard for the opinion of Judge SHERMAN in that case, I am of the opinion that it does not apply here. From the pleadings in that case it appeared that the proposal was to secure financing for certain hotels in Washington, D. C., and defendants had the right to select the form of securities to be issued if they undertook the financing. The parties were sent back for trial because the Appellate Division thought that the plaintiff was entitled to have a jury decide the question of whether he negotiated for a loan secured by a mortgage lien or for a loan that was not to be secured by a mortgage lien.

In the case at bar there is no question whatsoever from the beginning that any loan which was made to the defendants would have to be secured by a mortgage on real estate.

The *Seckendorff* case is not authority for the fact that a broker can collect for originating commission or for an introduction commission for a loan on real estate. If real estate is going to be the principal element involved in the transaction a broker has to have a license and cannot evade its necessity by referring to the services as originating or introducing or any other fantastic term. A statute enacted for the protection of the public must be interpreted fairly to effect the purposes of its enactment. It is not to be rendered ineffectual by a strained construction.

The essential feature of a broker's employment is to bring the parties together in an amicable frame of mind, with an attitude toward each other and toward the transaction in hand which permits their working out the terms of their agreement. They may reach that agreement without his aid or interference. Indeed, in

a transaction of any magnitude, the terms would never be settled beforehand or negotiated finally by the broker. Each party would always wait until in direct contact with the other side in order that he might drive the best bargain possible. The broker would have no opportunity to induce one party or the other to agree upon some or all of the terms, and would not be expected to do so. He would be entitled to his commission if the parties agreed upon terms originally proposed by one or the other, or agreed between themselves after the introduction.

This does not mean that the broker has not negotiated the transaction. He does that when he builds up in the minds of the parties a desire to do the business. He never cares what the terms are, so long as the agreement occurs. If the statute does not apply to such a situation then it is a toothless enactment. Every unlicensed broker will make the same argument that the plaintiff here has made, that he did not have to bring the parties to actual agreement upon all the details, that that phase was something for the parties themselves to determine. In short, every unlicensed broker will be enabled to carry on his business just as he did before the statute came into existence, simply by calling himself a finder, an originator, an introducer, instead of a broker. This would be an absurd limitation of the statute and one unfounded in reason or policy. A broker "negotiates" just as much when he brings parties together in such frame of mind that they can by themselves evolve a plan of procedure, as when he himself carries on the discussion and personally induces an agreement to accept a specific provision.

Motion to dismiss the complaint granted.