## Alford *v.* Raschiatore, Appellant.

Argued October 4, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

636

*Harold K. Wood,* with him *Henry Temin* and *Reilly & Wood,* for appellant.

*Thomas Lack,* for appellee.

OPINION BY DITHRICH, J., January 14, 1949:

Plaintiff appellee, who has never been licensed as a real estate broker in Pennsylvania, sued for and recovered a sum equivalent to a real estate commission for procuring a purchaser for a restaurant property put up for sale by the defendant. Defendant moved for judgment n. o. v. and for a new trial, and from the refusal of his motions he has brought this appeal.

While practically conceding that he does not come within any of the groups excluded from the operation of the Real Estate Brokers License Act of May 1, 1929, P. L. 1216, 63 PS 431, as amended, the chief burden of his argument is that he did not "negotiate" a sale within the meaning of the Act. Section 2 of the Act provides, in part: "The term 'real estate broker' shall include all persons . . . who, .for another and for a fee, commission, or other valuable consideration, shall sell, exchange, purchase, or rent, or shall *negotiate* the sale, exchange, purchase or rental, or shall offer or attempt to *negotiate* the sale, exchange, purchase, or rental . . . of any real estate." (Italics supplied.)

The facts bearing on the point thus raised, considered in a light most favorable to plaintiff because of the verdict, are that a real estate agent, who had been trying

without success to find a purchaser for the property, said to the owner, "My friend here, John, [Alford] gets around a good bit and might be able to find you someone that would be interested in the place." Appellant said to Alford: "You find me a buyer. Bring me someone. I want to sell it . . . if you bring me buyer . . . I pay you the same as I pay this man [putting his hand on the real estate agent's shoulder] or anybody else." Within a few days plaintiff took one Anthony Dundee, manager of the Palm Garden Restaurant and Cafe in Wilmington, Delaware, who plaintiff learned from a real estate agent was looking for a place in Pennsylvania, to appellant's place of business and introduced him to appellant. Dundee subsequently purchased the property for the sum of $21,000, which was $1,000 less than the asking price. Plaintiff then demanded and later brought suit for the usual real estate commission of five per cent, which he recovered at the hands of the jury and which the court subsequently refused to set aside.

Defendant denied having entered into any agreement with plaintiff, but, in view of the finding of the jury which entitles plaintiff to the benefit of every fact and every inference of fact reasonably to be deduced from the evidence, we must consider that the agreement, substantially as testified to by plaintiff, was entered into. The question, then, is: Is the agreement enforceable? As we have stated, supra, the chief burden of plaintiff's argument is that he did not act as a real estate broker, since he did not negotiate the sale, and the learned court below in its opinion refusing defendant's motion for judgment n. o. v. said the verdict of the jury which determined that plaintiff had not "negotiated" the sale, was "amply supported" by the language of this Court in *Werner v. Hendricks*, 121 Pa. Superior Ct. 46, 48, 49, 182 A. 748. There is no denying the fact that the part played by the plaintiff in this transaction would not measure up to the definition of "negotiation" adopted by the Court in that

opinion. But there the plaintiff was seeking to establish that the sale of a newspaper route or agency had been procured by his efforts and he contended that "as the court below found as a fact he had called the attention of . . . [the subsequent purchaser] to the route on three different occasions, he is entitled to recover even though he had not been the procuring cause of the sale because this finding of fact established that he had been 'negotiating' with the purchaser and, therefore, was within the terms of the contract." But we said: "In this connection we must consider a comment by the court in its discussion that 'there was nothing more than an offer on the part of the plaintiff and an immediate refusal on the part of Conard on the ground that the route was not suitably located for his purposes.' " This Court was not there called upon to determine the meaning of the word "negotiate" as used in the Real Estate Brokers License Act.

But in *Verona v. Schenley Farms Co.*, 312 Pa. 57, 167 A. 317, which squarely rules this case, the Supreme Court, in passing upon plaintiff's averment that he was not " 'engaged in the real estate business' " and had merely agreed with defendant " 'to use his best efforts in presenting to the [commissioners] the special, particular and peculiar advantages of [defendant's land] . . . as being the most fitting, suitable and desirable location for the auditorium . . . then under consideration, as compared with other properties which were being offered and considered by the said County Commissioners,' " said on page 61:

"Plaintiff's averment, in his reply, that, in performing the contract, he was not 'engaged in the real estate business,' is mere denial of what the statute defines as 'acting in the capacity of a real estate broker,' a denial which, therefore, amounts to nothing. We all agree that the described negotiation with the county commissioners, in the ordinary and accepted definition of the word 'negotiate,' was the work of a real estate broker within the

meaning of the statute. The legislature was of course familiar with the great variety of real estate brokerage contracts made from time to time, and the definition of real estate broker must be understood in the light of the common knowledge on the subject; . . ."

"The common knowledge on the subject," of which the Court must take judicial notice, is that in probably the bulk of real estate transactions conducted by real estate agents or brokers, the agent's part amounts to little more than finding and introducing to a party who is ready and willing to sell, a prospect who is ready, willing and able to buy.

We cannot give to the word "negotiate," in the sense intended by the Legislature, the strict construction contended for by appellee. If we should so do, it would exclude from the regulatory purpose of the Act a great percentage of brokers and salesmen who normally do no more than acquaint prospective buyers and sellers with the location and price of available property, and who annually comply with the licensing feature of the Act in the belief that they are covered by it.

In giving the word "negotiate" a broad interpretation, we are in accord with the courts in sister states which have construed similar real estate brokers licensing acts. In *Baird v. Krancer,* 138 Misc. 360, 246 N. Y. S. 85, recovery was denied to the plaintiff who sought to avoid the provisions of the real estate property law requiring licensing to recover real estate brokers' commissions. The Court said (page 88 of 246 N. Y. S.) :

"The essential feature of a broker's employment is to bring the parties together in an amicable frame of mind, with an attitude toward each other and toward the transaction in hand which permits their working out the terms of their agreement. They may reach that agreement without his aid or interference. Indeed, in a transaction of any magnitude, the terms would never be settled beforehand or negotiated finally by the broker. . . .

"*This does not mean that the broker has not negoti-ated the transaction. . . .* If the statute does not apply to such a situation, then it is a toothless enactment. Every unlicensed broker will make the same argument that the plaintiff here has made, that he did not have to bring the parties to actual agreement upon all the de-tails, that that phase was something for the parties them-selves to determine. In short, every unlicensed broker will be enabled to carry on his business just as he did be-fore the statute came into existence, simply by calling himself a finder, an originator, an introducer, instead of a broker. This would be an absurd limitation of the sta-tute and one unfounded in reason or policy. A broker 'negotiates' just as much when he brings parties together in such frame of mind that they can by themselves evolve a plan of procedure, as when he himself carries on the discussion and personally induces an agreement to accept a specific provision." (Emphasis added.)

In *Grammer v. Skagit Valley Lumber Co.,* 162 Wash. 677, 299 P. 376, a case practically on all fours with the in-stant case, where the plaintiff was employed "to endeavor to obtain a buyer" for defendant's properties, in suing for a real estate commission he contended that such au-thority as he had was an entirely different thing from the authority to " 'sell or offer to sell, buy or offer to buy, or *negotiate* or offer to *negotiate* the purchase, sale . . . of the real estate.' " (Italics supplied.) The Washington statute, precluding a broker from recovering a commis-sion unless he had obtained a license, is substantially the same as the Pennsylvania statute. The Court held that plaintiff (page 379 of 299 P.) "nevertheless . . . was a broker with limited authority" and concluded "We are satisfied that the plaintiff was employed as a broker, and that the contract is one falling within the terms of the Real Estate Brokers' Act." The Court cited with ap-proval the case of *Baird v. Krancer,* 138 Misc. 360, 246 N. Y. S. 85, supra. See also *Massie v. Dudley,* 173 Va. 42, 3 S. E. 2d 176.

Appellee further contends that since the Real Estate Brokers License Act is a statute in derogation of common right, in that it abridges the power to make contracts, it must be strictly construed. That contention has been disposed of most effectively by the Supreme Court in *Verona v. Schenley Farms Co.,* supra, on pages 64, 65:

"In determining the meaning of the act, it is necessary to consider the evils which the act was obviously designed to correct: Provident Life and Trust Co. v. Klemmer, 257 Pa. 91, 93, 101 A. 351. As a statute for the prevention of fraud, it must be liberally construed to effect the purpose: Nolan v. Jones, 67 Pa. Superior Ct. 430; 263 Pa. 124, 106 A. 235. Plaintiff's contention that the statute is penal and must therefore be strictly construed, overlooks the settled rule that 'there is no impropriety in putting a literal construction on a penal clause and a liberal construction on a remedial clause' in the same statute: Com. v. Shaleen, 215 Pa. 595, 64 A. 797. In considering its meaning, it is also important to note that the requirement of the license is in aid of the collection of the revenue payable by brokers pursuant to the Act of 1907, supra. It is settled that 'statutes to prevent frauds upon the revenue are considered as enacted for the public good and to suppress a public wrong, and therefore, although they impose penalties or forfeitures, are not to be construed, like penal laws generally, strictly in favor of the defendant; but they are to be fairly and reasonably construed, so as to carry out the intention of the legislature': United States v. Stowell, 133 U. S. 1, 12; United States v. Ryan, 284 U. S. 167."

The learned court below, sitting en banc, said: "The trial Judge instructed the jury that if it found the contract averred had been entered into by and between plaintiff and defendant it would have to determine whether or not plaintiff could maintain this action to recover thereunder or whether he was precluded from doing so by the terms of the Statute above referred to, quoting the ma-

terial portions of the Act and defining the word 'negoti-ate' used therein in a manner to which no exception was taken by counsel for either party. . . . We believe that all those questions were questions of fact to be deter-mined by the jury and that the answers thereto estab-lished by the verdict . . . may not be disturbed." They were not questions of fact to be determined by the jury but questions of law to be determined by the court. The trial judge should have decided as a matter of law that recovery on the part of the plaintiff was precluded by the Real Estate Brokers License Act and directed the jury to find for the defendant.

The judgment is reversed.