[No. 6845–1. Division One. November 19, 1979.]

NICHOLAS SCHMITT, SR., *Respondent,* v. THOMAS COAD, *Appellant.*

*Bogle & Gates* and *Ronald T. Schaps,* for appellant.

*Ryan, Swanson, Hendel & Cleveland* and *Dale E. Kremer,* for respondent.

JAMES, J.—This case concerns the applicability of Washington's real estate–business opportunity brokers statute, RCW 18.85, to the sale of a controlling stock interest in a corporation.

Defendant Thomas Coad owned stock in two closely held Snohomish County newspaper corporations, a majority interest in one and a minority interest in the other. In 1973, Coad and plaintiff Nicholas Schmitt agreed that Schmitt would attempt to find a buyer for all of the capital stock of the two corporations, and that, if successful, Coad would pay Schmitt a percentage commission based upon the sale price of Coad's stock. Through Schmitt's efforts, Coad was put into contact with a potential buyer, The Chronicle, Inc. After direct negotiations between Chronicle, Inc., and Coad, a sale of 100 percent of the stock in both corporations was consummated in 1975.

After Coad failed to pay the commission, this suit followed. Coad's principal defense was that recovery was barred because Schmitt was not a licensed real estate bro-

ker. A bench trial resulted in a judgment in favor of Schmitt. We reverse.

The trial judge found that Schmitt had "never *acted independently* and was always subject to the complete and exclusive control of [Coad]" (italics ours) and concluded that "[t]he services rendered by [Schmitt] to [Coad] were not controlled or governed by the real estate licensing law of the State of Washington." Finding of fact No. 9; conclusion of law No. 3. We do not agree with his conclusion.

At all relevant times, an earlier version of RCW 18.85.010 provided:

(1) "Real estate broker," or "broker," means a natural or artificial person, *acting independently,* who for commissions or other compensation, engages in the purchase, sale, exchange, rental, or negotiation therefor, of real estate, or interests including leases and/or options therein, and for business opportunities or interest therein, belonging to others, or sale of any interest in any formal or informal association in which the purchaser acquires use of real property unless the offering is registered with the state of Washington, or holds himself out to the public as being so engaged;

(2) "Real estate salesman" or "salesman" means any natural person who represents a real estate broker in any of his activities;

(3) An "associate real estate broker" is a person who has qualified as a "real estate broker" who works with a broker and whose license states that he is associated with a broker;

. . .

(5) "Business opportunity" shall mean and include business, business opportunity and good will of an existing business or any one or combination thereof;

(Italics ours.)

RCW 18.85.100 made the possession at all relevant times of a valid real estate broker's license a prerequisite to a suit for a broker's commission.

The trial judge's oral opinion reveals that he was persuaded that the statutory definition of a "broker" could be met only if a person acted independently in the sense of

not being subject to his principal's control. Using this definition, he found that Schmitt had not acted independently because Schmitt only had authority to offer Coad's stock to potential purchasers and "never had any authority to enter into a sale, negotiate for a sale, make a binding commitment for sale [or] to state a firm sales price or terms of sale." Finding of fact No. 8.

 Statutes must be read as a whole and construed so as to avoid unlikely consequences which could result from a literal reading. *Alderwood Water Dist. v. Pope & Talbot, Inc.,* 62 Wn.2d 319, 382 P.2d 639 (1963). Reading former RCW 18.85.010 as a whole, we conclude that the phrase "acting independently" was intended only to differentiate between "broker" and "associate real estate broker." Were we to adopt the trial judge's construction, an anomalous result would follow: A person could not meet the definition of a "broker" unless he was free of his employer's control, but a person who worked with a broker as an "associate broker" would not be so restricted.

The trial judge further concluded that the sale of the stock was an "isolated [securities] transaction" exempted from either state or federal regulation, and that Schmitt "was not required to be a licensed security salesman, broker/dealer, or investment advisor." Conclusion of law No. 4. He found that the purchase of the stock "was for purposes of acquiring the properties therein and not for purposes of investing money in a common enterprise with profits to come solely from the efforts of others." Finding of fact No. 16.

Schmitt asserts that in *Marble v. Clein,* 55 Wn.2d 315, 347 P.2d 830 (1959), it was held that the sale of an incorporated business is exempt from the requirements of RCW 18.85. That characterization of *Marble* is not supported by a reading of the opinion. There, the sole question before the court was the applicability of the securities act and the opinion so states; the applicability of RCW 18.85 was not in issue.

Although a sale of corporate stock is, a fortiori, a sale of securities, it does not follow that it may not also constitute a sale of a "business, business opportunity and good will of an existing business or any one or combination thereof." Former RCW 18.85.010(5). A transfer of a controlling interest in the voting stock of a corporation is a commonly utilized means of effecting a sale of a "business." In most instances, such a sale will be exempt from regulation under Washington's securities act. RCW 21.20.320(1). *See Yeakel v. Ralls*, 9 Wn. App. 133, 511 P.2d 65 (1973). But the provisions of former RCW 18.85.010 in no way purported to exempt the sale of incorporated businesses.

■ Real estate–business opportunity brokers statutes are designed to protect the public from fraud and misrepresentation by dishonest persons.

> Statutes regulating the real estate business, and requiring brokers and salesmen to procure a license before acting as such, have been enacted in many States. They have the same general purpose and are designed to protect the public from the fraud, misrepresentation and imposition of dishonest and incompetent persons. The reasons are not hard to see. The relations of trust and confidence which lie in the very nature of the business require that honesty and a fair amount of intelligence be exercised by those engaged in its pursuit. The records of the courts disclose far too many instances of litigation arising from unrestricted and unregulated agencies in this field.

*Massie v. Dudley*, 173 Va. 42, 55, 3 S.E.2d 176 (1939).

■ Were we to adopt Schmitt's position, the result would be that the sale of small businesses which had been incorporated would usually not be subject to regulation. In light of the purpose of RCW 18.85, such a result would be both unreasonable and illogical. *Williams v. Pierce County*, 13 Wn. App. 755, 537 P.2d 856 (1975). Accordingly, we hold that RCW 18.85 applies to the sale of an incorporated business. *See George Nangen & Co. v. Kenosha Auto Transp. Corp.*, 238 F. Supp. 157 (E.D. Wis. 1965).

As defined by former RCW 18.85.010(1), a broker was a "person . . . who for commissions . . . [engaged] in the purchase, sale, exchange, rental, or negotiation therefor, of . . . business opportunities or interest therein, belonging to others, . . . or [held] himself out to the public as being so engaged;".

In his first complaint, Schmitt alleged that Coad had authorized him to find a purchaser for all of the stock of the corporations, that he had negotiated a sale, and that Coad had agreed with the purchaser of the stock that Coad would pay the "broker's commission" due Schmitt. Some 3 years later, after the broker's license issue had been raised, Schmitt was permitted to file an amended complaint which changed his characterization of the services he had rendered to those of a "consultant." He argues that the services contemplated and performed by him were not those of a real estate–business opportunity broker but were instead "consulting services during the course of Mr. Coad's negotiations for the sale of the stock in the companies."

The trial judge found that the parties had agreed that "[Schmitt] was authorized to offer" Coad's stock and that Schmitt was "to receive 5% of the price paid . . . by any purchaser to whom [Schmitt] had initially offered the stock." Finding of fact No. 5. It is undisputed that Schmitt was brokering other newspaper businesses at the same time he was seeking a purchaser for Coad, had done so in the past, and had entered into an agreement to split the "brokerage fee" on Coad's "listing" with another business broker. Exhibit 17.

■ In *Grammer v. Skagit Valley Lumber Co.*, 162 Wash. 677, 681, 682, 299 P. 376 (1931), the plaintiff similarly contended he was not a "broker" as that term was used in the real estate broker licensing act then in effect. However, he contended he was entitled to a commission on the sale of a lumbering business and timberlands because he had "prepared" the properties for presentation to prospective purchasers and was the "procuring" cause of the sale. In holding that the services performed were those of a

broker, the court quoted with approval from *Baird v. Krancer,* 138 Misc. 360, 246 N.Y.S. 85 (1930) as follows:

> A statute enacted for the protection of the public must be interpreted fairly to effect the purposes of its enactment. It is not to be rendered ineffectual by a strained construction.
>
> " . . .
>
> " . . . If the statute does not apply to such a situation, then it is a toothless enactment. Every *unlicensed* broker will make the same argument that the plaintiff here has made, that he did not have to bring the parties to actual agreement upon all the details, that that phase was something for the parties themselves to determine. In short, every unlicensed broker will be enabled to *carry on his business* just as he did before the statute came into existence, simply by calling himself a *finder,* an *originator,* an *introducer,* instead of a *broker.* This would be an absurd limitation of the statute and one unfounded in reason or policy.

*Grammer v. Skagit Valley Lumber Co., supra* at 685–86. Schmitt may have been a "consultant," but he was also an unlicensed "broker."

The judgment of the trial court is reversed and the complaint is dismissed.

ANDERSEN and RINGOLD, JJ., concur.

Reconsideration denied December 21, 1979.

Review denied by Supreme Court March 7, 1980.