ANCHOR PAPER CORPORATION; SAM B. WOODS, JR. AND J. L. HUGHES, D/B/A ANCHOR PAPER COMPANY, A PARTNERSHIP v. ANCHOR CONVERTING COMPANY, INC.

No. 8526SC273

(Filed 4 February 1986)

**Unfair Competition § 1— sale of paper converting company—no violation of Business Opportunity Sales Act**

   The trial court properly dismissed defendant's counterclaim for violations of the Business Opportunity Sales Act, N.C.G.S. 66-94, *et seq.*, where there was competent evidence to support the trial judge's finding that plaintiffs sold a paper converting company to defendant; in order for defendant to recover on its counterclaim under the Act, defendant would have had to present evidence, and the court would have had to find, that plaintiffs guaranteed that the purchaser would derive certain income from the business opportunity or that plaintiffs represented that they would provide a sales program or marketing program which would enable defendant to derive income in excess of the price paid for the business opportunity; and evidence supported the trial court's finding that "no representations" were made until after the sale was consummated and that the agreement was for plaintiffs to be sales and purchase agents on a commission basis.

APPEAL by defendant from *Snepp, Judge.* Judgment entered 9 October 1984 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 16 October 1985.

In their complaint plaintiffs sought payment on account for certain paper goods sold and delivered to defendant and commissions earned by the individual plaintiffs. Defendant counterclaimed alleging fraud, unfair and deceptive trade practices and violations of the Business Opportunity Sales Act, G.S. 66-94, *et seq.* The case was tried before a judge without a jury. Plaintiffs took a voluntary dismissal of their claim for commissions and tendered into evidence a verified statement of account. At the close of defendant's evidence, plaintiffs moved for an involuntary dismissal of defendant's counterclaim. The trial judge entered judgment for plaintiffs on their account and dismissed defendant's counterclaim. Defendant appeals.

*Helms, Mulliss and Johnston by Robert B. Cordle, L. D. Simmons, II and Charles F. Bowman for plaintiffs-appellees.*

*Newitt and Bruny by Roger D. Bruny and John G. Newitt, Jr. for defendant-appellant.*

Anchor Paper Corp. v. Anchor Converting Co.

PARKER, Judge.

Defendant's sole assignment of error is the granting of plaintiffs' motion to dismiss defendant's counterclaim based on violations of the Business Opportunity Sales Act. The evidence adduced at trial tended to show the following: plaintiffs, Woods and Hughes, were officers, directors and principal shareholders of Anchor Paper Corporation (APC), which was in the business of buying and selling paper products and converting them into paper by-products. On 17 November 1979, Woods and Hughes met with Levi Sabir and Wynelle Sebree from Florida to negotiate the sale of certain pieces of equipment from plaintiffs to Sabir and Sebree, who were interested in starting a paper converting business in Florida. The scope of the negotiations expanded, however, until agreement was reached on 18 December 1979 for plaintiffs to sell the entire paper converting operations of Anchor Paper to Sabir and Sebree.

Sabir and Sebree incorporated Anchor Converting Company, Inc. (ACC), the defendant, in North Carolina. The newly formed corporation purchased the paper converting operation from APC for $200,000. Plaintiffs Woods and Hughes agreed to remain part of the new operation as salesmen, using their contacts gained from their management of APC. Plaintiff Anchor Paper Company sold the raw paper to ACC for use in its business.

Defendant contends that in the sale, Woods and Hughes made representations to defendant's incorporators concerning sales, profitability, expenses and existing accounts and that the transaction was subject to the Business Opportunity Sales Act.

The trial judge made the following findings of fact:

4. In November, 1979, Wynelle Sebree and Levi Sabir, both residents of Florida, who desired to go into the paper converting business, approached APC concerning the possibility of purchasing certain paper converting machinery from it.

5. Sebree and Sabir were both experienced in business affairs and Sabir had extensive experience in the paper converting business.

6. After inspecting the equipment, Sebree and Sabir agreed that ACC would purchase the equipment and also a

certain inventory of paper which Sabir had examined and which was necessary for ACC to commence operations.

7. The plaintiffs, Woods and Hughes, agreed to act as sales and purchase agents for ACC on a commission basis, and did so until June, 1980, when their commissions were unpaid.

8. No representations were made to ACC by APC, Woods or Hughes, concerning the volume of business or expenses of doing business which might be experienced by ACC until after consummation of the transaction when in January, 1980, Hughes at ACC's request made and gave to it a handwritten projection of figures as to projected sales and expenses which were based upon assumptions as to expected sales territory and sales force which were supplied to him by ACC.

The trial court concluded as a matter of law that ACC is indebted to plaintiffs for goods sold and delivered to it as set forth in plaintiffs' first claim for relief; and upon the facts and the law, ACC has shown no right to relief upon its counterclaim.

Defendant did not except to the trial court's findings of fact. Accordingly, the findings are presumed to be supported by evidence and are binding on appeal. *Jarman v. Jarman*, 14 N.C. App. 531, 188 S.E. 2d 647, *cert. denied*, 281 N.C. 622, 190 S.E. 2d 465 (1972). The only question raised by defendant's exception to the judgment is whether the trial court's findings of fact supported its conclusions of law. *Jackson v. Collins*, 9 N.C. App. 548, 176 S.E. 2d 878 (1970).

The North Carolina Business Opportunity Sales Act, N.C.G.S. 66-94 provides:

For the purposes of this Article, "business opportunity" means the sale or lease of any products, equipment, supplies or services for the purpose of enabling the purchaser to start a business and in which the seller represents:

. . . .

(3) The seller guarantees that the purchaser will derive income from the business opportunity which exceeds the price paid for the business opportunity; or that the seller will

refund all or part of the price paid for the business oppor-
tunity, or repurchase any of the products, equipment, sup-
plies or chattels supplied by the seller, if the purchaser is
unsatisfied with the business opportunity; or

(4) That it will provide a sales program or marketing pro-
gram which will enable the purchaser to derive income from
the business opportunity which exceeds the price paid for the
business opportunity, provided that this subsection shall not
apply to the sale of a marketing program made in conjunction
with the licensing of a federally registered trademark or a
federally registered service mark, or when the purchaser
pays less than one hundred dollars ($100.00).

There is no contention that omitted subsections (1) and (2) are
applicable. For defendant to have recovered on its counterclaim
under the Business Opportunity Sales Act, defendant would have
had to present evidence, and the court would have had to find,
that plaintiffs guaranteed that the purchaser would derive certain
income from the business opportunity or that plaintiffs represent-
ed that they would provide a sales program or marketing pro-
gram which would enable defendant to derive income in excess of
the price paid for the business opportunity.

When the trial judge sits as trier of fact, the trial judge's
findings are binding on appeal provided there is competent
evidence to support the findings. *Seders v. Powell, Commissioner
of Motor Vehicles*, 298 N.C. 453, 259 S.E. 2d 544 (1979). In other
words, credibility of the witnesses is for the trial judge and find-
ings based thereon will not be set aside even if there is evidence
to the contrary. *Mazda Motors v. Southwestern Motors*, 296 N.C.
357, 250 S.E. 2d 250 (1979). In the instant case, not only was there
competent evidence to support the trial judge's findings; defend-
ant has not excepted to those findings. The findings clearly sup-
port the challenged conclusion of law. The trial court found that
"no representations" were made until after the sale was consum-
mated and that the agreement was for Woods and Hughes to be
sales and purchase agents on a commission basis. Based on these
findings, the transaction did not come within the purview of the
Business Opportunity Sales Act; plaintiffs were not required to
comply with the provisions of that Act and the trial judge proper-
ly concluded that defendant had no right to relief upon its coun-
terclaim.

Affirmed.

Chief Judge HEDRICK and Judge BECTON concur.