Kenneth I. BROWN, Appellant,

v.

HERMAN MILLER, INC., Appellee.

No. 86–5283.

United States Court of Appeals,
District of Columbia Circuit.

Nov. 17, 1989.

Kenneth I. Brown, pro se.

Jeffrey J. Peck, with whom Jeffrey A. Dunn, Washington, D.C., was on the brief, for appellee.

Before WALD, Chief Judge, D.H. GINSBURG, Circuit Judge, and ROBINSON, Senior Circuit Judge.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Kenneth I. Brown instituted an action against Herman Miller, Inc. (Miller), asserting a breach of contract and unjust enrichment. The District Court entered summary judgment for Miller on the ground that a District of Columbia statute foreclosed any recovery by Brown. We reverse.

I

The essential facts are straightforward and undisputed. In December, 1981, Brown apprised Miller of the possibility of selling office furniture to MCI Communications Corporation (MCI). When Miller expressed interest, Brown set up a meeting between Miller and MCI personnel, which led eventually to a sale. Brown was not involved in the negotiations; his participation ended when he arranged the meeting. He alleges, however, that Miller agreed orally to compensate him, though concededly they never settled on any particular amount. Brown demanded payment on several occasions, but Miller steadfastly refused.

Brown's complaint contained two counts. One claimed entitlement to a reasonable "finder's fee," and the other sought recovery on the theory of unjust enrichment. The District Court, however, held that Brown was a "business-chance broker," and, for lack of a license as such, was statutorily barred from suit.[1]

The legislation upon which the District Court rested its decision[2] provides in relevant part:

---

1. *Brown v. Herman Miller, Inc.*, Civ. No. 83–3316 (memorandum) (Mar. 11, 1985) at 4–9.

2. This legislation was repealed in 1983, D.C.Law 4–209, 30 D.C.Reg. 390 (1983), but, by virtue of a savings clause, it retains its vitality for purposes

No person ... engaged in the business or acting in the capacity of a ... business-chance broker or a business-chance salesman within the District of Columbia shall bring or maintain any action in the courts of the District of Columbia for the collection of compensation for any services performed as a ... business-chance broker or a business-chance salesman, ... without alleging and proving that such person ... was a duly licensed ... business-chance broker or a business-chance salesman, at the time the alleged cause of action arose.[3]

The term "business-chance broker" is defined as follows:

A "business-chance broker" is any person ... who for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, leases or offers to lease, or negotiates the purchase or sale or exchange of a business, business opportunity, or the good will of a business for others.[4]

The court relied heavily upon *Wickersham v. Harris*,[5] a Tenth Circuit decision interpreting a District of Columbia statute dealing with "real-estate brokers" to include a real-estate finder within the statute's definition of "broker."[6] The District Court referred also to the legislative purpose of the business-chance licensing provisions—protection of the public from fraud and other imposition—as justification for its holding that finders are not exempt from the licensing requirement.[7]

The statute invoked by the District Court erects a barrier to Brown's suit[8] only if he was a "business-chance broker" within the contemplation of the legislative scheme.[9] On the record before us, Brown could have been so classified only if he "negotiate[d] the purchase or sale ... of a ... business opportunity ... for others."[10] The District Court properly focused on the question whether Brown, at most a finder who merely introduced Miller to MCI, was a "business-chance broker" as well.[11] Our difficulty is with the court's answer in the affirmative.[12]

## II

In reviewing the District Court's action, we remain advertent to the peculiar role of a federal court sitting in a diverse-citizenship case.[13] Substantive rules of decision must derive from applicable local law;[14]

of the case at bar. D.C.Code Ann. § 45–1951 (1986 repl. vol.).

3. D.C.Code Ann. § 45–1907(h) (1981).

4. *Id.* § 45–1902(a)(2) (1981).

5. 313 F.2d 468 (10th Cir.1963).

6. *Brown v. Herman Miller, Inc., supra* note 1, at 5–7.

7. *Id.* at 6.

8. It has been held that when licensing under the statute is essential to institution of a suit in a District of Columbia court, it is equally a prerequisite to one brought in a federal court. *Wickersham v. Harris, supra* note 5, 313 F.2d at 471–472. We need not address this question since we conclude that Brown's activity in this case did not necessitate a license.

9. See D.C.Code Ann. § 45–1907(h) (1981), quoted in text *supra* at note 3. Brown could not have been a "business-chance salesman" since here he was not "employed by a licensed business-chance broker." See D.C.Code Ann. § 45–1902(a)(4) (1981).

10. See D.C.Code Ann. § 45–1902(a)(2) (1981), quoted in text *supra* at note 4.

11. "[T]he question before this court is whether a mere 'finder' is also a 'business-chance broker' under D.C.Code Ann. § 45–1902(a)(2), or, in other words whether a finder 'negotiates' the purchase or sale of a business opportunity." *Brown v. Herman Miller, Inc., supra* note 1, at 5.

12. See *id.* at 4–9.

13. The jurisdiction of the District Court rested exclusively upon a diversity of citizenship between Brown and Miller. See Complaint ¶ 1, *Brown v. Herman Miller, Inc.,* Civ. No. 83–3316 (D.D.C.) (filed Nov. 7, 1983); Amended Complaint ¶ 1, *Brown v. Herman Miller, Inc.,* Civ. No. 83–3316 (D.D.C.) (filed Apr. 17, 1986); *Brown v. Herman Miller, Inc.,* Civ. No. 83–3316 (D.D.C. Apr. 17, 1986) (order finding diversity jurisdiction).

14. *Steorts v. American Airlines, Inc.,* 207 U.S. App.D.C. 369, 371 n. 24, 647 F.2d 194, 196 n. 24 (1981); *Tuxedo Contractors, Inc. v. Swindell-Dressler Co.,* 198 U.S.App.D.C. 426, 428 n. 14, 613 F.2d 1159, 1161 n. 14 (1979); *Lee v. Flintkote Co.,* 193 U.S.App.D.C. 121, 124–125 n. 14, 593 F.2d 1275, 1278–1279 n. 14 (1979).

decisions elsewhere have value only insofar as they may reflect what expectably the local law may turn out to be, or how it may be applied.[15] To be sure, the statutory definition of "business-chance broker" does not totally exclude the possibility that a finder may properly be deemed a broker, at least in some situations. But neither the text of the definitional provision nor its legislative history yields any significant clue one way or the other on that score, and the District of Columbia courts have never construed it in that respect.

Thus left completely without guidance by local law, the District Court's obligation was to divine, as best it could, how the District of Columbia courts would have construed the pivotal statutory language.[16] For that purpose, the court was free to consult decisions in other jurisdictions for assistance.[17] Additionally to the Tenth Circuit's pronouncement that real-estate finders are a species of real-estate brokers,[18] other courts in some number have concluded similarly under varying statutory regimes.[19] It has also been held that the mere act of bringing interested parties together for discussion suffices as the "negotiation" of a resulting sale.[20]

These cases, however, support only partially the District Court's ruling that Brown was intercepted by the statute involved. The question was not whether he was a broker, but whether he was a business-chance broker.

The business-chance legislation makes it crystal clear that Brown did not encounter the statutory ban on suits for compensation by unlicensed plaintiffs unless the subject of the Miller–MCI bargain was "a business, business opportunity, or the goodwill of a business...."[21] Since that transaction involved no more than office furniture, Brown needed a license only if its purchase by MCI amounted to the acquisition of a "business opportunity." That term is widely taken as a reference to an opportunity to acquire something of entrepreneurial quality—for instance, an enterprise to develop property,[22] a licensing agreement to market products,[23] or a chance to obtain the controlling interest in a corporation's voting stock.[24] On the other hand, transactions such as a purchase of a paper-converting machine or a paper inventory,[25] a machine for making ice for retail sale in a grocery store[26] or even a minority stock interest in

15. *Murphy v. Erwin–Wasey, Inc.,* 460 F.2d 661, 663 (1st Cir.1972); *Francis v. INA Life Ins. Co.,* 809 F.2d 183, 185 (2d Cir.1987); *Union Carbide Corp. v. Consumers Power Co.,* 636 F.Supp. 1498, 1501 (E.D.Mich.1986).

16. *Cunninghame v. Equitable Life Assurance Soc'y,* 652 F.2d 306, 308–309 (2d Cir.1981); *Becker v. Interstate Properties,* 569 F.2d 1203, 1205–1207 (3d Cir.1977), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978); *McClung v. Ford Motor Co.,* 472 F.2d 240, 242 (4th Cir.1973), *cert. denied,* 412 U.S. 940, 93 S.Ct. 2779, 37 L.Ed.2d 400 (1973); *Winston Corp. v. Continental Cas. Co.,* 508 F.2d 1298, 1301–1304 (6th Cir.1975), *cert. denied,* 423 U.S. 914, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975).

17. See note 15 *supra* and accompanying text.

18. *Wickersham v. Harris, supra* note 5, 313 F.2d at 471–472.

19. See *George Nangen & Co. v. Kenosha Auto Transp. Corp.,* 238 F.Supp. 157, 159 (E.D.Wis. 1965); *Broughall v. Black Forest Dev. Co.,* 196 Colo. 503, 593 P.2d 314, 315–316 (1978); *Baird v. Krancer,* 138 Misc. 360, 246 N.Y.S. 85 (N.Y. Sup.Ct.1930); *Alford v. Raschiatore,* 163 Pa.Super. 635, 63 A.2d 366, 368 (1949); *Schmitt v.*

*Coad,* 24 Wash.App. 661, 604 P.2d 507, 510 (1979).

20. *George Nangen & Co. v. Kenosha Auto Transp. Corp., supra* note 19, 238 F.Supp. at 159; *Broughall v. Black Forest Dev. Co., supra* note 19, 593 P.2d at 315 n. 1; *Alford v. Raschiatore, supra* note 19, 63 A.2d at 368.

21. See D.C.Code Ann. § 45–1902(a)(2) (1981), quoted in text *supra* at note 4.

22. *Bloomgarden v. Coyer,* 156 U.S.App.D.C. 109, 479 F.2d 201 (1973).

23. *Sporn v. Suffolk Marketing, Inc.,* 56 N.Y.2d 864, 865, 453 N.Y.S.2d 393, 394, 438 N.E.2d 1108, 1109 (1982).

24. *Pass v. B.S.F. Co.,* 40 A.D.2d 813, 338 N.Y.S.2d 295, 296 (1972).

25. *Anchor Paper Corp. v. Anchor Converting Co., Inc.,* 79 N.C.App. 144, 338 S.E.2d 821, 823 (1986).

26. *Graham v. Kold Kist Beverage Ice, Inc.,* 43 Or.App. 1037, 607 P.2d 759, 761 (1979).

a corporation [27] do not confer entrepreneurship, and thus do not qualify as business opportunities. It plainly follows that neither does a single purchase of office furniture.

Moreover, a holding that Brown needed a license authorizing the limited role he played would open the door to a bizarre state of affairs. It could serve as the foundation for rulings demanding licensing of just about anyone connected significantly with a sale, purchase or exchange of personal property, no matter how innocuous the particular activity or transaction might be. "Business opportunity," as used in licensing statutes, was hardly meant to sweep so broadly and loosely.[28]

We realize that a legislative purpose to curb fraud and other dishonesty is not to be compromised by stingy construction of statutory requirements. At the same time, it is imperative that an overly-expansive view of the licensing provisions implicated here be tempered to avoid ambushing of situations not intended to be targets. We think the District of Columbia courts would have been sensitive to this concern, and would have responded in much the same fashion that other tribunals have.

This case does not call for an effort to delineate the outer boundaries of "business opportunity" as employed in the statute. We need do no more than express here our deep-seated belief as to what the District of Columbia judiciary would have done in the case before us. We hold that licensing as a "business-chance broker" was not required of Brown, and that he is not precluded from pursuing his claims in court.

The judgment is reversed and the case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

---

**27.** See *Hiller v. Franklin Mint, Inc.,* 485 F.2d 48, 50 (3d Cir.1973) (construing New York statute).

**28.** Cf. *Freedman v. Chemical Constr. Corp.,* 43 N.Y.2d 260, 267, 401 N.Y.S.2d 176, 181, 372 N.E.2d 12, 16–17 (1977).