Richard KASSATLY, Plaintiff,

v.

Joseph A. YAZBECK, et al.,
Defendants.

Civ.A. No. 88–3218.

United States District Court,
District of Columbia.

March 19, 1990.

David A. Dopsovic, Henry & Monroig
and Robert A. Jaffe, William H. Bode &
Associates, Washington, D.C., for plaintiff
Richard Kassatly.

Richard O. Duvall and James C. Turner,
Dunnells, Duvall, Bennett & Porter, Wash-
ington, D.C., for Kaempfer, defendant.

Richard C. Shadyac and Richard C. Shad-
yac, Jr., Arlington, Va., for Yazbeck, defen-
dant.

MEMORANDUM OF OPINION
AND ORDER

REVERCOMB, District Judge.

This action arises out of the lease and
possible sale of The Grand Hotel by Joseph

Kaempfer and his various real estate partnerships [1] to Joseph Yazbeck and his businesses ("the Yazbeck defendants").[2] Plaintiff Richard Kassatly, a former confident of Joseph Yazbeck, brings this diversity action alleging that he is entitled to a finder's fee for the transaction.

Plaintiff's motion to dismiss Kaempfer's real estate partnerships as defendants is GRANTED in light of the Supreme Court's recent decision in *C.T. Carden v. Arkoma,* — U.S. ——, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990).[3] At bar are defendant Kaempfer's motion for summary judgment and plaintiff/counterdefendant's motion to dismiss the counterclaim.

## I. *Background.*

The essential facts of this case are undisputed. In the early 1980's, a limited partnership in which Mr. Kaempfer is a general partner, developed the block on the south side of M Street between 23rd and 24th Streets, N.W. Defendant Kaempfer and his various real estate partnerships built two projects on the site—the Regent Hotel (now The Grand Hotel)[4] and an office building ("2300 M Street"). Financing of the projects was secured through cross-collateralized loans.

In late 1983, plaintiff Kassatly, a Maryland resident, became friends with Joseph Yazbeck, a Lebanese businessman who wanted to acquire a "five star hotel" in the District of Columbia. Plaintiff agreed to help Yazbeck in his hotel search and to advise Yazbeck about conducting business "in the American way."

Plaintiff purportedly discovered that Kaempfer wanted to sell the Hotel and, after two years of negotiations (1984–1986), Yazbeck and Kaempfer consummated a "lease and option to buy." The lease agreement transferred the Hotel's management responsibilities to the Yazbeck defendants, effective October 1, 1986. Under the option agreement, Yazbeck could acquire a 70% interest in the Hotel after September 1, 1993 with the right to purchase the Hotel at any time Kaempfer offered it to a third party. In addition, the parties agreed to indemnify each other against any claims asserted by a real estate broker or agent claiming a fee.

When the Yazbeck group took over the Hotel, plaintiff became Yazbeck's salaried employee, responsible for hotel insurance, licensing, regulatory compliance, labor relations and other matters. He also served as Yazbeck's "general assistant." Eventually, the Kassatly–Yazbeck relationship soured in the Spring of 1987.

Plaintiff Kassatly now sues the Yazbeck group and Joseph Kaempfer for breach of oral contracts. Plaintiff alleges that by reason of these contracts the Yazbeck defendants owe him $50,000 per year effective October 1, 1986; that each defendant group owes him a 2.5% finder's fee upon sale of the Hotel; and, that Kaempfer owes him an additional 2.5% commission upon sale of the adjacent office building.[5]

---

1. In addition to naming Joseph Kaempfer as a defendant, plaintiff also sued Kaempfer's real estate partnerships, namely, 23rd and M Street Associates, Ltd., a limited partnership and the general partner of both Square 37 Partners and LDJA Limited Partnership; Square 37 Partners, a limited partnership that owns The Grand Hotel; and, LDJA Limited Partnership, a limited partnership that owns the office building at 2300 M Street adjoining the Grand Hotel.

2. The Yazbeck defendants consist of Joseph Yazbeck, the Crown Hotel Corporation and The Grand Hotel.

3. Prior to the *Carden* decision there was a split in both the Courts of Appeal and in this court as to whether the citizenship of a limited partner was to be considered in determining the citizen-

ship of a defendant limited partnership. *Compare Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178, 184 (2d Cir.1966), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966); *Gordon–Maizel Const. Co. v. Leroy Productions, Inc.,* 643 F.Supp. 188 (D.D.C.1986) *with Carlsberg Resources Corporation v. Cambria Savings and Loan Ass'n,* 554 F.2d 1254, 1258 (3rd Cir. 1977); *Conroy v. Winn,* 581 F.Supp. 1280 (D.D. C.1984).

4. Hereinafter referred to as "the Hotel."

5. Plaintiff argues that, because the Hotel and the adjacent office building were cross-collateralized and refinancing was necessary prior to leasing the Hotel, plaintiff had a separate commission contract with Kaempfer regarding 2300 M Street.

II. *Whether plaintiff is seeking an improper real estate commission.*

Defendant Kaempfer contends that plaintiff Kassatly acted as a "real estate broker,"[6] who for lack of a license as such, is statutorily barred from bringing an action to collect his commission. See D.C.Code § 45–1926(c) (1986). Plaintiff, on the other hand, asserts that he acted as a "finder" or "business chance broker"[7] and was exempt from the licensing requirement.

■ The District of Columbia's statutory definition of "real estate broker" does not exclude the possibility that a "finder" or "business chance broker" may be deemed a "real estate broker," at least in some situations. Indeed, the title of the relevant regulations, "Real Estate and Business Chance Licenses," suggests that the District meant to require the licensing of "business chance brokers" involved in real estate transactions.[8] However, neither the text of the definitional provision nor its legislative history yields any significant clue one way or the other, and the District of Columbia courts have never construed the provision. Left without guidance by local law, this Court may consult other jurisdictions for assistance. See *Brown v. Herman Miller*, 890 F.2d 443, 445 (D.C.Cir.1989).

■ As generally defined, a real estate broker is an agent who, for a commission or fee, is employed by a principal to negotiate the sale, purchase, lease or exchange of real property to a third party. A broker is an intermediary or middleman whose function and duty is to bring together the buyer and seller or owner and lessee. A broker may be employed as a "finder," i.e., to find a prospective purchaser and introduce the parties. "Finders" may be exempt from real estate licensing requirements *if* none of the functions of a broker are performed. The distinction between a "broker" and "finder" depends on the individual's involvement in the transaction. If the "finder" takes any part in the negotiations, no matter how slight, he will be considered a "broker" and must be licensed to collect a commission.[9] R. Powell, *The Law of Real Property*, § 938.13[1]–[2] (1989).

In *Wickersham v. Harris*, 313 F.2d 468 (10th Cir.1963), the Tenth Circuit interpreted the earlier District of Columbia statute dealing with "real-estate brokers" to include a real-estate finder. Although the broker/finder in that case not only introduced the buyer and seller, but also advised the buyer about purchasing tactics and participated in the negotiations, the opinion suggests that real estate finders are simply a species of real-estate brokers. *Wickersham, supra,* 313 F.2d at 471; *Brown v. Herman Miller, Inc., supra,* 890 F.2d at 445. Other courts have reached similar conclusions under varying statutory regimes. *Schmitt v. Coad,* 24 Wash.App. 661, 604 P.2d 507, 510 (1979) (individual employed to find buyer for all capital stock of two newspapers was a "broker"); *Broughall v. Black Forest Dev. Co.,* 196 Colo. 503, 593 P.2d 314 (1978) (finder of a buyer for a radio station whose sale involved a transfer of a leasehold interest in the land on which it was situated was a "real estate broker"); *George Nangen & Co. v. Kenosha Auto Transport Corp.,* 238 F.Supp. 157 (E.D.Wisc.1965) (individual employed to find buyer willing to purchase

---

**6.** D.C.Code §§ 45–1922(12), 45–1926(b)(1) (1986).

**7.** Prior to 1981, a "business-chance broker" was any person ... who for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, leases or offers to lease, or negotiates the purchase or sale or exchange of a business, opportunity, or the good will of a business for others. The District Counsel repealed this definition and the requirement that "business-chance brokers" be licensed in 1983. *Brown v. Herman Miller,* 890 F.2d 443, 444, n. 2 (D.C.Cir.1989).

**8.** See also *Harrison v. J.H. Marshall & Associates, Inc.,* 271 A.2d 404, 405 (D.C.App.1970) (purpose of the Act is to protect the public against fraud in real-estate transactions; its protection encompasses virtually every transaction involving real estate).

**9.** Neither the general nor the statutory definition of a real estate broker requires that a "real estate broker" have "control over the price" as plaintiff seems to suggest. See *Plaintiff's Opposition to Kaempfer Defendants' Motion for Summary Judgment,* p. 18.

business on stated terms was a "real estate broker"); *Alford v. Raschiatore*, 163 Pa. Super. 635, 63 A.2d 366, 368 (1949) (mere act of bringing interested parties together for discussion suffices as the "negotiation" of a resulting sale).

■ This Court need not decide whether a mere "finder" qualifies as a "real estate broker" under District of Columbia law. Plaintiff's deposition testimony demonstrates that plaintiff did much more than simply introduce the parties. After Kaempfer rejected Yazbeck's initial offer for the Hotel and office building, Kassatly personally contacted Kaempfer about the deal on Yazbeck's behalf.

KASSATLY: He [Yazbeck] says, "Kassatly, I want you to go to see Kaempfer immediately and tell him that I don't agree with this and we still need to negotiate and I still am interested in buying the hotel.

QUESTION: Did you do that?

ANSWER: Yes absolutely.

(Kassatly deposition, p. 212).

Plaintiff further advised Yazbeck about each Kaempfer proposal and Yazbeck's counterproposal (including a counterproposal made for negotiation purposes only). His "advice" extended far beyond an explanation of American business practices. Among other things, Kassatly and Yazbeck discussed the proposed annual rent, working capital contributions, letters of credit, a proposed $10 million loan, distribution of tax benefits, Yazbeck's right to acquire 2300 M Street, negotiation tactics and refinancing proposals. Kassatly also participated in strategy and drafting discussions with Yazbeck and his attorney and often received copies of the attorney's correspondence about the deal.

Plaintiff's deposition fully demonstrates that he personally negotiated the Hotel transaction, relaying each party's counteroffer, advising each party as to the terms that might be accepted and suggesting items to withdraw in the negotiation process. As plaintiff explained,

Usually when Joseph [Yazbeck] arrived in the United States I was with him morning, noon and night. If I wasn't with Yazbeck, I was with Kaempfer. Or if I wasn't with Yazbeck, I was with Kaempfer and Yazbeck together at meetings, with in Joseph's suite or in Joey's home, many times Joey's office, at my office. (Kassatly deposition, p. 247).

There can only be one conclusion under these facts—plaintiff Kassatly acted as more than a "finder" with respect to The Hotel transaction. He was a real estate broker. Being unlicensed as such, he can not sue for a commission on the resulting transaction.

■ With respect to the alleged finder's fee regarding 2300 M Street, plaintiff's claim is premature. The building apparently has not been sold nor is a sale planned for the near future. Under the circumstances, the Court can not evaluate whether plaintiff has acted as a real estate broker or finder.[10]

III. *The Kaempfer Counterclaim for Abuse of Process.*

■ Plaintiff/counterdefendant's motion to dismiss the Kaempfer counterclaim for abuse of process is DENIED. Contrary to plaintiff/counterdefendant's assertion, an action for abuse of process, as distinguished from a malicious prosecution, does *not* require termination of the prior litigation. *Williams v. City Sales*, 192 A.2d 534, 537 (D.C.App.1963). In any event, plaintiff's action against the counterplaintiffs is terminated by this Memorandum of Opinion and Order. Today's decision does not preclude either party from making a full motion for summary judgment in the future.

ORDER

For the reasons set forth above, IT IS ORDERED THAT:

---

**10.** The Court notes, however, that the Hotel transaction included negotiations regarding the

sale of 2300 M Street.

Plaintiff's motion to dismiss defendants 23rd and M Street Associates, Ltd., Square 37 Partners and LDJA Limited Partnership is GRANTED;

Defendant Joseph Kaempfer's motion for summary judgment is GRANTED as to Count IV, it being established by the facts of record that plaintiff Kassatly acted as a real estate broker with respect to the Hotel transaction. Count III is DISMISSED as premature;

Having found that the facts of record conclusively demonstrate that plaintiff Kassatly acted as a real estate broker with respect to the Hotel transaction, summary judgment is GRANTED in favor the Yazbeck defendants as to Count II;

Plaintiff/counterdefendant Kassatly's motion to dismiss the Kaempfer defendants' counterclaim is DENIED;

In sum, the only claims that remain are Count I against the Yazbeck defendants for the sum of $50,000 per year and the Kaempfer group's counterclaim for abuse of process. A Status Hearing will be scheduled immediately by separate order.