■ Coldwell Banker Residential Real Estate et al., Respondents, v Milton Berner et al., Appellants. [609 NYS2d 948] —Cardona, P. J. Appeal (transferred to this Court by order of the Appellate Division, Second Department) from that part of an order of the Supreme Court (Nicolai, J.), entered August 16, 1991 in Westchester County, which denied defendants' motion for summary judgment dismissing the complaint.

This is an action for real estate brokerage commissions claimed to be due for the negotiation of a lease between defendants and Citibank and for the negotiation of a sales

contract between defendants and Joseph Sisca. Initially we note that, in analyzing the propriety of Supreme Court's denial of defendants' motion for summary judgment, we construe the facts in a light most favorable to plaintiffs as the nonmoving parties so as not to deprive them of their day in court (see, Russell v Hepburn Hosp., 154 AD2d 796, 797; Bershaw v Altman, 100 AD2d 642, 643).

In March 1989, defendants owned a parcel of undeveloped land located in the Town of Somers, Westchester County. Defendants had obtained approval to construct a 12,000 square-foot office building on the property. Plaintiff Vijay Raghavan, a real estate salesman employed by plaintiff Coldwell Banker Residential Real Estate, approached defendant Milton Berner and advised him that Citibank might be interested in leasing approximately 4,000 square feet in the building to be constructed. Thereafter, on March 27, 1989, the parties entered into a letter agreement (hereinafter the Brokerage Agreement) drafted by Berner, an attorney. The Brokerage Agreement authorized Raghavan to offer Citibank lease space in Berner's proposed building at a rent of "$20/SF triple net". The Brokerage Agreement indicated that a building was to be constructed on the site, that lease terms over a 10-year period were to be negotiated and set forth the terms of plaintiffs' commissions. The Brokerage Agreement also contained the following provision: "This agreement is subject to prior sale, lease, contract & shall expire in sixty (60) days."

At the same time, Berner verbally authorized Raghavan to offer the building for sale for $750,000. Thereafter, Raghavan obtained copies of building plans from Berner and sent them to Citibank. Raghavan set up a meeting between himself, Berner and Citibank representatives at Citibank's offices in Manhattan, and after about two hours the meeting continued without Raghavan. Sometime thereafter, during a telephone call, Berner indicated that he wanted to deal directly with Citibank. Raghavan acceded to Berner's request; however, he stayed in touch with Citibank regarding the progress of the negotiations.

In approximately June 1989, Berner was no longer desirous of constructing the building. Raghavan therefore contacted Sisca, a developer, apprised him of the property's availability, what it was worth and the value of Citibank's lease. He then set up a meeting between Berner and Sisca which took place at the property on or about June 19, 1989. Prior to the meeting, Berner offered to pay Raghavan $50,000 as a total commission (for his services on the lease and in the sale, if the

sale took place). At the meeting, Raghavan acceded to Sisca's request that the parties be left alone to discuss the project. On June 29, 1989, Berner and Sisca executed a sales contract for the property conditioned upon Berner obtaining an executed lease from Citibank. In a letter to Berner from Raghavan dated July 11, 1989, plaintiffs advised Berner that his offer of $50,000 was rejected as it was too low.

Meanwhile, Berner commenced lease negotiations with Citibank which extended into August 1989. These negotiations stalled over Citibank's concern that no drive-up window would be possible at the property. Instead of advising Berner and Sisca about this problem, Raghavan contacted Citibank representatives and offered to show them other properties in Somers. He introduced Citibank representatives to the owners of the Somerstown Shopping Center located across the road from the subject property and they had discussions. Berner and Sisca continued to negotiate with Citibank, despite the fact that Sisca rescinded his sales contract with Berner in November 1989. In February 1990, Citibank signed a 10-year lease with Berner. In March 1990, Sisca and Berner reinstated their contract and the property was transferred to Sisca in June 1990.

Plaintiffs commenced this action in November 1990 claiming commissions for the lease execution and for the sale to Sisca. Following Raghavan's deposition, defendants moved for summary judgment dismissing the complaint. Finding issues of fact precluding summary judgment, Supreme Court denied the motion. Defendants appeal.

Defendants' first contention is that plaintiffs are not entitled to commissions because they failed to *procure* a lease within the 60-day period of the Brokerage Agreement. We disagree. A plain reading of the Brokerage Agreement does not reveal a clearly expressed requirement that plaintiffs had to *procure* a lease from Citibank within 60 days in order to entitle them to a commission. Because the Brokerage Agreement was drafted by defendants, all ambiguity must be resolved against them *(see, Graff v Billet,* 64 NY2d 899, 902; *Manning v Briar Hall N.,* 151 AD2d 650, 651). Furthermore, the record shows that defendants continued to accept Raghavan's services after the expiration of the period in question, as demonstrated by Berner's continuing communications with Raghavan regarding the progress of the lease negotiations, Berner's offer to pay Raghavan a total commission for services in connection with the lease and any resulting sale of $50,000, his agreement to meet with Raghavan and Sisca at the property to discuss its

sale, and his follow-up communications with Berner about the progress of negotiations with Sisca. Thus, there is a material triable issue of fact as to whether the parties implicitly agreed to extend the Brokerage Agreement beyond the 60-day period as a result of their course of dealings *(see, Bashant v Spinella,* 67 AD2d 1100).

Contrary to defendants' next contention, plaintiffs have tendered evidence sufficient to raise material triable issues of fact as to whether Berner and Raghavan entered into a verbal agreement to sell the subject property and, in any event, whether Raghavan was the procuring cause *(see, Greene v Hellman,* 51 NY2d 197, 206) of the Citibank lease and the sale to Sisca. Regarding the latter issue, the record shows that Raghavan's communication with Citibank and later with Sisca brought these parties to Berner and that both the lease and the sale resulted as a consequence of Raghavan's actions *(see, Salzano v Pellillo,* 4 AD2d 789, 790; *see also, Brown, Harris, Stevens v Rosenberg,* 156 AD2d 249, 250). " 'The essential feature of a broker's employment is to bring the parties together in an amicable frame of mind, with an attitude toward each other and toward the transaction in hand which permits their working out the terms of their agreement' " *(Salzano v Pellillo, supra,* at 790, quoting *Baird v Krancer,* 138 Misc 360, 362-363). Furthermore, Raghavan was not required to be present throughout the negotiations nor was his presence required when the final agreement was made *(see, Greene v Hellman, supra; Brown, Harris, Stevens v Rosenberg, supra; Gabrielli v Cornazzani,* 135 AD2d 340, 342).

Defendants' last contention is that plaintiffs forfeited all rights to commissions by violating their fiduciary obligations to defendants. "It is clear that a broker, as agent for an owner, owes a duty of good faith and loyalty to his principal" *(Douglas Holly, Inc. v Rice,* 161 AD2d 560, 561, *lv denied* 76 NY2d 709; *see, Matter of Goldstein v Department of State, Div. of Licensing Servs.,* 144 AD2d 463; *Matter of Grant Realty v Cuomo,* 58 AD2d 251). An agent breaches this affirmative duty by acting for a party whose interests are adverse to those of the principal *(see, Matter of Goldstein v Department of State, Div. of Licensing Servs., supra,* at 464) or by failing to disclose information obtained during the period of engagement which affects the transaction in which the agent is engaged, so that the principal may take steps to protect his or her interests *(see, Klein v Twentieth Century-Fox Intl. Corp.,* 201 Misc 132, *affd* 279 App Div 989). Although Raghavan failed to disclose to Berner the drive-up window problem and the fact that he

had initiated lease discussions between Citibank and the owners of the Somerstown Shopping Center, the record shows that Berner acquired knowledge of both through his direct negotiations with Citibank and, as already noted, ultimately obtained a lease from Citibank. Therefore, absent proof in the record that Berner was injured by the failure of Raghavan to disclose, Raghavan is not foreclosed from recovering commissions (see, 11 NY Jur 2d, Brokers, § 95, at 449-450).

The record also shows that at the time Raghavan first approached Berner, he informed him that he had a financial institution that might be interested in leasing space in the proposed building. If this information was sufficient to impart knowledge to Berner that Raghavan was also acting on behalf of Citibank at the time the parties entered into the Brokerage Agreement (see, Klein v Twentieth Century-Fox Intl. Corp., supra) and Berner consented to Raghavan's dual interests, then Raghavan's acts may not amount to a breach of his fiduciary duties of good faith and loyalty (see, Matter of Goldstein v Department of State, Div. of Licensing Servs., supra, at 464; Hasbrouck v Rymkevitch, 25 AD2d 187). Berner limited Raghavan's authority under the Brokerage Agreement to obtaining a lease from Citibank at a specific rental and preferred to negotiate directly with Citibank officers. This may be indicative that he knew and consented to a dual-agency arrangement.

We therefore find that this record presents material triable issues of fact. Supreme Court therefore properly denied defendants' motion for summary judgment (see, Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404).

Mikoll, White, Casey and Yesawich Jr., JJ., concur. Ordered that the order is affirmed, with costs.