■ WILSEN ASSOCIATES REAL ESTATE CORPORATION, INC., Appellant, v FRANZ PIZILLY, Defendant, and JOHN A. WARD, Respondent. [611 NYS2d 694] —Yesawich Jr., J. Appeals (1) from an order of the Supreme Court (Monserrate, J.), entered June 9, 1993 in Tompkins County, which granted defendant John A. Ward's motion for summary judgment dismissing the complaint against him, and (2) from the judgment entered thereon.

This is an action to recover a real estate commission allegedly due and owing to plaintiff for having brokered the sale of real property in the City of Ithaca, Tompkins County, formerly owned by defendant Franz Pizilly. On March 9, 1990, Pizilly entered into a contract giving plaintiff an exclusive right to sell the property for a period of six months. The listed selling price was $195,000. The contract also provided for an additional six-month period during which plaintiff would be entitled to a 10% commission if the property was sold to a purchaser who had been shown the property during the initial six months.

In June 1990, Pizilly's attorney, defendant John A. Ward, wrote plaintiff purporting to cancel the listing contract because plaintiff had not made diligent efforts to advertise or sell the property. In response, Katherine Ross-Caveney, plaintiff's broker involved with the sale, telephoned Ward and was assertedly advised that the letter was merely "a formality" required in conjunction with the preparation of Pizilly's pending bankruptcy petition, that she should continue to look for a buyer and that, if a sale was made at or near the listing price, plaintiff's commission would be "protected".

Ross-Caveney showed the property to representatives of the Drop-In Center, Inc. on September 7, 1990 and to representatives of the City, which was apparently involved in the former's funding, in October 1990. Although Ross-Caveney asserts that during the ensuing months Ward repeatedly stated that she would be "protected", she also acknowledges being told that it was critical to obtain an offer "at or very close to"

the listing price in order for there to be enough funds to "go around" at the closing.

In December 1990, the City offered to purchase the property for $163,900. The purchase offer, accepted by Pizilly, recited that no real estate broker or agent was involved in the transaction. At the closing on January 14, 1991, the entire purchase price was paid to Citizens' Savings Bank to satisfy Pizilly's mortgage debt of over $170,000.

Thereafter, plaintiff brought this suit against Pizilly and Ward, charging the latter with inducing Pizilly to breach the listing contract and with fraud. Ward's motion for summary judgment having been granted, plaintiff appeals. We affirm.

The only issue meriting discussion is the fraud charge. An attorney may be held liable for fraudulent statements made to a nonclient (see, Koncelik v Abady, 179 AD2d 942, 944), but recovery may only be had if it can be demonstrated, inter alia, that the statements were false at the time they were made and were intended to deceive, that the attorney knew of, or acted recklessly with regard to, their falsity, and that the party seeking to recover justifiably relied on those statements (see, Channel Master Corp. v Aluminum Ltd. Sales, 4 NY2d 403, 407; Chase Manhattan Bank v Perla, 65 AD2d 207, 209-210). Mere opinions or predictions of future events, however, are not actionable unless they are statements of intent to do something in the future, made with the knowledge that the act will not in fact be performed, or with the present intention not to perform it (see, Channel Master Corp. v Aluminum Ltd. Sales, supra, at 407-408). Because the record, even when considered in the light most favorable to plaintiff, as it must be at this juncture (see, Coldwell Banker Residential Real Estate v Berner, 202 AD2d 949, 950), does not demonstrate that Ward at any time unreservedly represented that plaintiff would receive a commission at the closing, or that it would have been reasonable for Ross-Caveney to have relied on his statements as essentially guaranteeing eventual payment, regardless of the availability of funds at the closing, summary judgment was properly granted.

It is not disputed that Ward repeatedly emphasized that if the purchase was not consummated at a price equal to or "very close to" the listing price of $195,000, there would be insufficient funds at the closing. Although Ross-Caveney maintains that this does not constitute an indication that her commission would never be paid, but only that it might not be paid immediately upon closing, it is noteworthy that she also

admits being aware that Pizilly was having serious financial difficulty at the time, and not unimportantly, she concedes that Ward at no time promised to pay the commission from his own resources. Given these undisputed facts, it would not have been reasonable for her to have relied on Ward's statements as an assurance that she would be paid her commission even if there were not enough funds available at the closing to do so.

Mikoll, J. P., Mercure, Crew III and Weiss, JJ., concur. Ordered that the order and judgment are affirmed, with costs.