■ SHOLOM & ZUCKERBROT REALTY CORP., Appellant, v CITI-BANK, N.A., Respondent. [613 NYS2d 588] —Order, Supreme Court, New York County (Diane A. Lebedeff, J.), entered on or about April 15, 1993 which, inter alia, granted defendant-respondent Citibank, N.A.'s ("Citibank") cross-motion for summary judgment dismissing the complaint and denied plaintiff-appellant Sholom & Zuckerbrot Realty Corp.'s ("S&Z") motion for certain discovery, unanimously reversed, without costs, the cross-motion is denied in its entirety, plaintiff's motion is granted, and the parties are directed to proceed to discovery.

This action concerns a commercial warehouse located at 1320 Viele Avenue, Bronx, New York (the "Property"). In 1988, Citibank issued a $1,100,000 mortgage on the Property to a Ms. Marlene Waschitz, pursuant to which Citibank became the primary mortgagee. In 1990, Ms. Waschitz defaulted on the mortgage payments and attempted to sell the Property through S&Z, a licensed commercial real estate broker. S&Z, however, was unable to procure a buyer.

Citibank subsequently commenced a mortgage foreclosure proceeding, during the pendency of which Gary Nadel ("Nadel") of S&Z began a dialogue with Jay Marcus ("Marcus"), a Vice-President of Citibank. Plaintiff alleges that Marcus made the initial contact with Nadel and informed him that Citibank was anxious to find a buyer or a tenant for the Property, and that it wanted S&Z to act as a broker. Defendant, on the other hand, asserts that S&Z first established contact with Citibank, which is a common practice of brokerage houses once a foreclosure action is commenced. Marcus informed Nadel that Citibank was looking for a price of $9,000,000 in the event of a sale or a lease with a rental of $5 per square foot, to which Nadel allegedly responded that the sales figure was realistic but that the rental figure was too high. In any event, Nadel purportedly told Marcus he would see what he could do.

There is no dispute that plaintiff subsequently brought several prospective tenants and/or buyers to see the Property with defendant's knowledge and consent. There is also no dispute that the eventual tenant, Gary Plastic Packaging Corp. ("Gary Plastic"), was produced by plaintiff. The lease transaction which was thereafter negotiated was structured so that Viele Realty Corp. ("Viele Realty"), a junior lienor, entered into a lease agreement as the lessor with Gary Plastic, the lease being contingent on Viele Realty's subsequent purchase of the Property, which occurred when it was the only bidder at the foreclosure sale. Citibank, as a result of the foregoing, enjoyed an enhanced position as first mortgagee as it held a larger mortgage (it provided capital to Viele Realty to purchase the Property) and benefitted from the new tenant which provided a renewed cash flow.

Plaintiff thereafter sought a broker's fee from Citibank on the basis of the alleged oral agreement. Citibank refused, indicated that it never owned the Property and was therefore not liable, and told plaintiff to look to the new owner or tenant for its fee. This action ensued.

Plaintiff contends that after being repeatedly frustrated in

its efforts to depose Marcus, it made a motion to compel his examination before trial. Citibank cross-moved for summary judgment dismissing the complaint and for the imposition of sanctions pursuant to 22 NYCRR 130-1.1. The IAS Court granted defendant's cross-motion to the extent of dismissing the complaint, no sanctions were assessed, and denied plaintiff's motion as moot. We now reverse.

Initially, defendant argued that it could not be liable for a brokerage commission because it never owned the Property, which contention was correctly rejected by Justice Lebedeff. Although Citibank now claims that it has abandoned that argument, it directs this Court's attention to the fact that it never owned the Property a number of times in its brief. For clarification, it has long been held that a party does not have to own the Property in question to employ a broker and to be liable for that broker's commissions (see, Kalmon Dolgin Affiliates v Estate of Nutman, 172 AD2d 917; Kennon v Poerschke, 148 App Div 839).

Defendant also opines that plaintiff is not suing Viele Realty, the owner, or Gary Plastic, the tenant, because it is Citibank that has the "deep pockets". A review of the verified complaint and Nadel's affidavit, however, reveals that Citibank is being sued because it is alleged to have engaged S&Z and entered into an oral agreement for plaintiff's brokerage services. A commission agreement with a real estate broker may be oral and does not fall within the Statute of Frauds (see, General Obligations Law § 5-701 [a] [10]; Lane—Real Estate Dept. Store v Lawlet Corp., 28 NY2d 36). In the instant case, issues of fact are raised as to whether the parties entered into a binding brokerage agreement, and if such contract exists, the terms of the alleged agreement and Citibank's purported liability thereunder, precluding summary judgment (see generally, Dawson v Alarcon, 154 AD2d 320; Schor v Montaco Realty Co., 115 AD2d 470). There is, in addition, no support for Citibank's "deep pockets" theory.

Lastly, defendant's argument that plaintiff is not entitled to a commission because it failed to procure a tenant at the specific price and terms furnished by Citibank is without merit. Citibank allegedly wished to rent the Property for $5 per square foot and the lease which was eventually executed provided for a rental of $2.50 per square foot, which escalated pursuant to a schedule contained in the lease.

A real estate broker is entitled to a commission if the broker is the procuring cause of the sale; the compensation is

earned if the broker's communications brought the parties together, even though the broker does not negotiate the final terms of the transaction and/or was not present at the closing *(see, Brown, Harris, Stevens v Rosenberg,* 156 AD2d 249; *Salzano v Pellillo,* 4 AD2d 789).

In any event, an issue of fact exists as to whether the alleged agreement provided that the Property could only be rented at the specified rate. In its verified complaint, plaintiff asserts that it was engaged by Citibank: "[T]o identify a potential purchaser or tenant user of the Property who would be interested in purchasing or leasing the Property *on terms to be agreed upon by the Bank or a third party and such purchaser or tenant user* so identified by plaintiff." (Emphasis added.)

Further, Nadel asserts in his affidavit that Citibank's stated price and rental rate were only to be approximate and that Nadel had told Marcus the proposed rental fee was too high but that he would see what he could do. In light of the foregoing, it cannot be unequivocally stated that the terms of the agreement called for the Property to be rented only at Citibank's specified rate. Concur—Sullivan, J. P., Asch, Nardelli and Tom, JJ.