■ DOLORES HAGEDORN, Doing Business as WESTWOOD COUNTRY REALTY, et al., Respondents, v KATHLEEN ELWYN, Appellant. [645 NYS2d 77] —Crew III, J. Appeal from a judgment of the Supreme Court (Benson, J.H.O.), entered September 13, 1995 in Ulster County, upon a decision of the court in favor of plaintiffs.

Plaintiffs are licensed real estate brokers who commenced

this action against defendant to recover brokerage commissions arising out of the sale of defendant's property located in the Town of Woodstock, Ulster County. In February 1992, defendant entered into an open listing agreement with Westwood Country Real Estate to sell the parcel in question, which consisted of a restaurant, a barn and a single-family residence. The listing price was $685,000 and the agreement, which allowed defendant to list the property with as many brokers as she wished and permitted her to sell the property on her own, called for a 5% commission to Westwood on the sale price; in the event defendant sold the property on her own, no commission would be due.

Thereafter, in May 1992, plaintiff Gerald Goldman, a licensed real estate broker and certified real estate appraiser, contacted Sandra Hilton, one of Westwood's brokers, and informed her that he had a customer who wished to view the property. Goldman and Westwood agreed to co-broker the property and in June 1992, Goldman and Hilton showed the parcel to Timothy Callahan, a restaurateur from the City of Kingston, Ulster County. Although Callahan apparently could not afford the parcel at that time, he remained interested and continued to have discussions with Goldman regarding the parcel, approximately two to three times a month, between June 1992 and December 1992.

In December 1992, unbeknownst to either Goldman or Westwood, Callahan met with defendant's son, Philip Elwyn, and Elwyn agreed to sell the parcel to Callahan for $450,000, plus payment of unpaid property taxes totaling approximately $40,000. Defendant and Goldman executed a contract for sale in March 1993 which provided, in relevant part, that "[b]oth parties hereby agree and represent that no person or entity acted as the broker in this transaction and that there are no fees or commissions due as a result of this transaction". Plaintiffs' subsequent demands for a commission on the sale were denied and the property was sold to Callahan in June 1993.

In August 1993, plaintiffs commenced this action against defendant seeking a commission on the sale of defendant's property. Following joinder of issue and discovery, defendant moved for summary judgment. Supreme Court denied that motion and the matter proceeded to trial, at the conclusion of which Supreme Court found for plaintiffs and awarded them a $22,500 commission, with interest from March 3, 1993. This appeal by defendant followed.

It is well settled that "[a] real estate broker is entitled to a

commission if the broker is the procuring cause of the sale" (*Sholom & Zuckerbrot Realty Corp. v Citibank*, 205 AD2d 336, 338; *see, Ryan v Bettiol*, 211 AD2d 844, 845-846; *Salzano v Pellillo*, 4 AD2d 789, 790) which, in turn, requires "a direct and proximate link, as distinguished from one that is indirect and remote, between the bare introduction [of the buyer and seller] and the consummation [of the sale]" (*Greene v Hellman*, 51 NY2d 197, 206). Stated differently, " '[t]he essential feature of a broker's employment is to bring the parties together in an amicable frame of mind, with an attitude toward each other and toward the transaction in hand which permits their working out the terms of their agreement' " (*Salzano v Pellillo*, *supra*, at 790, quoting *Baird v Krancer*, 138 Misc 360, 362-363; *see, Sholom & Zuckerbrot Realty Corp. v Citibank*, *supra*, at 338-339). It therefore necessarily follows that although the broker need not be present for the actual negotiations (*see, Coldwell Banker Residential Real Estate v Berner*, 202 AD2d 949, 952; *Spalt v Lager Assocs.*, 177 AD2d 879, 882; *Salzano v Pellillo*, *supra*, at 790), he or she must do more than simply introduce the parties (*see, ERA Joseph Green Real Estate v Daubert*, 186 AD2d 885, 887), call the property in question to the attention of a potential buyer (*see, Lanstar Intl. Realty v New York News*, 206 AD2d 411, 412; *Manning v Briar Hall N.*, 151 AD2d 650, 651; *Gabrielli v Cornazzani*, 135 AD2d 340, 342) or provide that buyer with limited information (*see, Brown & Son Realty v Greenberg*, 195 AD2d 583, 584).

Based upon our review of the record as a whole, we can discern no basis for setting aside Supreme Court's finding that Goldman was a procuring cause of the sale of defendant's property to Callahan and, hence, that plaintiffs were entitled to a commission. While it is true that Callahan was not in a position to purchase defendant's property in June 1992, Goldman testified that Callahan remained interested and told Goldman to "keep an eye on the listing" in the hope that he might be able to "swing" the financing in the future. To that end, Goldman spoke with Callahan about the parcel on numerous occasions between June 1992 and December 1992, albeit in social settings, and Callahan testified that following his initial viewing of the property in June 1992, Goldman referred him to an attorney to assist him in obtaining information regarding financing, provided answers to his questions regarding, *inter alia*, the surrounding community, demographics, former restaurant personnel, possible menus and potential business clients, and in December 1992 furnished him with information regarding the water and sewer bills for the parcel. Under such circumstances, Goldman plainly cannot be said to have

abandoned his commission (*compare, Green v Hellman*, 51 NY2d 197, 206-207, *supra*) and, in our view, his efforts in this regard went beyond merely alerting Callahan to the availability of the parcel or providing him with limited information relative thereto.

Although defendant makes much of the fact that Callahan never made an offer on the property during his discussions with Goldman and, further, that upon meeting with Elwyn, Callahan's initial preference was to lease the property, Supreme Court nevertheless could rationally conclude that Goldman indeed was a procuring cause of the eventual sale. Callahan testified that although he and Elwyn met twice to discuss the possibility of leasing the premises, once it became apparent at a subsequent meeting that Elwyn was interested only in selling the property, Elwyn and Callahan reached an agreement as to price in only 10 minutes; as Callahan testified, this meeting consisted of "[t]en minutes of negotiations and 35 minutes of BS". Supreme Court could, therefore, rationally conclude (and the record certainly supports a finding) that it was Goldman's persistence in pursuing Callahan and his provision of the requested information that directly led to the consummation of the sale.

Finally, to the extent that defendant argues that plaintiffs are not entitled to a commission because Goldman was not involved in hammering out the final details of the sale, we note that not only was his presence at such negotiations not required (*see, e.g., Coldwell Banker Residential Real Estate v Berner*, 202 AD2d 949, 952, *supra*), but the record plainly reveals that Goldman's exclusion from the negotiations was motivated by Callahan and Elwyn's desire to avoid paying the commission. Defendant's remaining contentions have been examined and found to be lacking in merit.

Mikoll, J. P., Mercure, Casey and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed, with costs.