OPINION OF THE COURT
Frank V. Ponterio, J.
Plaintiff brought this action for services allegedly rendered in negotiating a lease for commercial real estate between defendants as landlord and a large pharmacy chain. As a preliminary issue defendants raise Real Property Law article 12-A as a defense, arguing that even if plaintiff rendered the services he claims he is barred by the statute from recovery. It is undisputed that plaintiff is not a licensed real estate broker or licensed real estate salesman. Section 442-d of the Real Property Law provides as follows:
“§ 442-d Actions for commissions; license prerequisite
“No person, copartnership, limited liability company or corporation shall bring or maintain an action in any court of *957 this state for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker or real estate salesman on the date when the alleged cause of action arose.”
Plaintiff at trial took the position that his services were those of a “finder” or “originator” and that as such, a line of cases permits his recovery without being licensed.
The law is clear that one who lacks a real estate broker’s license may under certain circumstances recover a commission for negotiating the transfer of a going business despite the fact that real estate forms an incidental element of the transaction. (See, Real Property Law § 440 [1]; Weingast v Rialto Pastry Shop, 243 NY 113 [1926]; Eaton Assocs. v Highland Broadcasting Corp., 81 AD2d 603 [2d Dept 1981].) The statute was interpreted in Weingast to mean that an unlicenced broker may recover a commission when real estate is an incidental and sometimes even significant but not dominant feature of a transaction. Weingast involved the sale of what the Court characterized as a going concern. The transaction was held to be commissionable to plaintiff for his activities for bringing about the transfer. In Eaton, the owner of radio stations sought new capital to finance further development. The resultant mortgage financing arranged by plaintiff was held to be incidental to the underlying transaction and recovery of compensation was held permissible.
A license is required, however, when real estate is the dominant feature of the transaction. (Myer v Jova Brick Works, 38 AD2d 615 [3d Dept 1971]; Sorice v DuBois, 25 AD2d 521 [1st Dept 1966]; Dodge v Richmond, 5 AD2d 593 [1st Dept 1958]; Baird v Krancer, 138 Misc 360 [Sup Ct, NY County 1930].) Although other cases appear to hold otherwise, they may be distinguished on their facts. In support of his contention that a “finder” is not barred from recovering a commission by Real Property Law § 442-d, plaintiff cites Seckendorff v Halsey, Stuart & Co. (234 App Div 61 [1st Dept 1931], revd on other grounds 259 NY 353), Chapman & Co. v Cornelius (39 F2d 555 [2d Cir 1930]), and Knauss v Gottfried Krueger Brewing Co. (142 NY 70 [1894]). The Court’s holding in Seckendorff does not support plaintiffs contention. In Seckendorff, plaintiff sought a commission for obtaining financing for certain property. On an earlier appeal of the trial court’s grant of defen *958 dant’s motion to dismiss the complaint the First Department explained: “The securities ultimately issued were of two kinds, mortgage bonds and debentures. Defendants had the right to select the form of securities to be issued if they undertook the financing. It may not be held that they are without liability upon an express engagement to pay an originating commission merely because they subsequently decided that the financing was to be in part through bonds secured by a mortgage lien. The denial in the reply raises the issue whether or not plaintiffs services consisted of negotiations to that end. That question of fact must be determined upon a trial. Obviously, if plaintiff did not, as he asserts, negotiate for a loan on real estate secured or to be secured by a mortgage, his right to compensation is not defeated by the statute.” (Seckendorff v Halsey, Stuart & Co., 229 App Div 318, 320 [1st Dept 1930].)
In Chapman & Co. v Cornelius (supra), Cornelius, plaintiff below, merely provided financing information to Chapman but did nothing to bring together the seller and purchaser or the purchaser and mortgagee. Knauss (supra) is also inapposite. Knauss in fact claimed to be a broker, not a finder, or middleman and the Appellate Division, First Department, so found. (Knauss v Gottfried Krueger Brewing Co., 62 Hun 46 [1891].) Moreover the only issue presented upon that appeal was whether plaintiff forfeited his right to a broker’s commission by taking on and concealing incompatible duties, i.e., representing both the purchaser and seller. To the extent that the Court of Appeals in reversing Knauss comments on the distinction between a finder and a broker, such commentary is dicta.
There remains a final question: where real estate is a dominant feature of a transaction is there nevertheless a level of services so minimal that statute would not bar recovery? The question is addressed by the Second Department in a reverse context, i.e., the extent of services a licensed broker must provide in order to earn a commission. “ ‘The essential feature of a broker’s employment is to bring the parties together in an amicable frame of mind, with an attitude toward each other and toward the transaction in hand which permits their working out the terms of their agreement. They may reach that agreement without his aid or interference. A broker “negotiates” just as much when he brings parties together in such a frame of mind that they can by themselves evolve a plan of procedure, as when he himself carries on the discussion and personally induces an agreement to accept a specific provision.’ ” (Salzano v Pellillo, 4 AD2d 789, 790 [2d Dept *959 1957], citing Baird v Krancer, supra; see also, Eaton Assocs. v Highland Broadcasting Corp., 81 AD 2d 603 [2d Dept 1981], supra.)
The court has thus established a boundary dividing the services of a broker and of a finder since it is clear that a level of services sufficient to earn a commission for a licensed broker cannot at the same time be so minimal as to support the claim of a purported finder that he has not engaged in brokerage services.
While there may exist a level of involvement less extensive than the boundary described in Salzano (supra; e.g., as in Chapman & Co. v Cornelius, supra) for which the statute would not be a bar, it need not be addressed here. The evidence in this case, including Berg’s own testimony clearly establishes that his involvement significantly exceeded the boundary and constituted brokerage services. Berg testified, for example, as follows:
“Q. So your function in being hired by Mr. Wilpon was what, Mr. Berg?
“A. Was to find an appropriate buyer or tenant that would maximize the potential of the property to examine its uniqueness and to meet with the potential tenant.
“Q. It is your testimony you performed that function; is that correct?
“A. I did.
“Q. Is that through your dealings with Mr. Horan?
“A. That is correct.
“Q. Can you describe your dealings with Mr. Horan, how often you met with him prior to this lease being executed?
“A. Well, this was over a two year period. I probably met with him at least a half a dozen times and spoke to him at least ten to twelve times [transcript, at 23-24] * * *
“Q. Did you design any of the interior of 4360 Hylan Boulevard?
“A. We had conversations as to how the utilities would be brought in, what would be necessary to complete the roof and storefront and what sort of paving would be necessary, what would have to be done in the basement area to bring in sewer and water.
“Q. Did you have any expertise in any of those fields?
“A. I believe so.
“Q. Which fields?
*960 “A. All of the above.” (Transcript, at 63.)
Further evidence of Berg’s substantial role is provided in the testimony of Charles R. Horan who negotiated on behalf of the proposed tenant:
“Q. In order to place the property in the condition you wanted it in, did you have any discussion with Mr. Berg as far as a contribution by the owner as far as dollars to fix the property up?
“A. There were negotiations in that regard, yes.
“Q. And does the sum of seventy-five thousand dollars ring a bell that you had required?
“A. At some point that number was a number I recall, yes.
“Q. So is it your testimony then that part of the negotiations was Sav-On being paid the sum of seventy-five thousand dollars to renovate the property?
“A. That’s correct [transcript, at 34] * * *
“Q. So it’s fair to say with a reasonable degree of certainty that up until April 27, 1989 you dealt exclusively with Jerome Berg; is that correct?
“A. I don’t recall anything other, yes.
“Q. And all your negotiations with respect to this property were exclusively with Jerome Berg; is that correct?
“A. Up until April 27th.
“Q. 1989?
“A. Yes.” (Transcript, at 40.)
Moreover, in his verified complaint at paragraph seventh Berg asserts that he “commenced negotiations and as a result of his efforts in fact brought about a written lease between defendant, Kenneth I. Wilpon and/or defendant Marjorie Wilpon with Hook-Super X Inc.”
I find therefore that the activities of Berg fall well within the definition of brokerage services defined in Real Property Law § 440 and that Berg is barred from any recovery therefor by Real Property Law § 442-d.
Consequently, defendant shall have judgment dismissing the complaint.