■ EQUIS CORPORATION, Respondent, v MACK-CALI REALTY CORPORATION et al., Appellants. [775 NYS2d 35]—

Order, Supreme Court, New York County (Herman Cahn, J.), entered on or about July 15, 2003, which denied defendants' motions to dismiss the complaint, unanimously reversed, on the law, without costs, the motions granted and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

In its complaint and an affidavit of its senior vice-president David Itzkowitz, plaintiff Equis alleges the following facts, the truth of which we must assume on this motion to dismiss pursuant to CPLR 3211 (a) (7) (*see e.g. McGill v Parker*, 179 AD2d 98, 105 [1992]). Plaintiff, a real estate broker, is a foreign corporation licensed and authorized to do business in New York. Its corporate headquarters is in Illinois. It has about 30 offices in the United States, including space in New York City and Rochester, New York. Defendant Mack-Cali, the owner of the Harborside Financial Center in Jersey City, is a Maryland

corporation authorized to do business in New York. Its home office is in Cranford, New Jersey. It has a regional office in Elmsford, New York, and leasing offices in seven states, including New Jersey but not New York. Defendant Tradeweb, a Delaware corporation licensed to do business in New York, had an office at One World Trade Center until September 11, 2001.

After September 11, Tradeweb and Equis entered into an oral agreement pursuant to which Equis would act as the sole and exclusive real estate broker for Tradeweb's temporary and permanent relocation to New Jersey and, in return, Tradeweb would "recognize Equis as the broker" and "cover and protect" Equis, i.e., would not dispute a broker fee claim, as to "any space introduced to Tradeweb." Equis procured temporary space for Tradeweb in Jersey City. On or about September 14, Equis's senior vice-president and associate broker, David Itzkowitz, contacted Mack-Cali's managing agent, Insignia ESG, a broker licensed in New Jersey and based in New York, and arranged a meeting between Mack-Cali and Tradeweb at Mack-Cali's Harborside Financial Center in Jersey City. At that meeting, both Mack-Cali and Tradeweb assured Equis that it would be recognized as the broker for the deal. Mack-Cali assured Equis that it would pay Equis a commission if Equis produced a tenant for the space at Harborside.

On September 17, 2001, Insignia sent a proposed lease to Itzkowitz, which Itzkowitz transmitted to Tradeweb. The proposal was for the 21st and 30th floors of the Harborside building known as Plaza V. By letter dated October 9, 2001, Tradeweb's president Jim Toffey acknowledged to Itzkowitz that Tradeweb and Equis had discussed the availability of space at Plaza V and that Tradeweb had received Insignia's proposal, but he stated that Tradeweb had "no interest in space at Plaza 5. The space referenced in the proposal very simply does not work for us."

In fact, however, in January 2002, Tradeweb entered into a lease for the 22nd floor of Plaza V. The lease contains a clause that states that neither party had any dealings or negotiations with any broker other than Insignia. Another clause states that Tradeweb has not "entered into any written agreement" with Equis Corp. or "delivered any writing" to Equis. The lease provides that it is governed by New Jersey law.

Equis brought this action claiming breach of contract and quantum meruit against both Mack-Cali and Tradeweb and unjust enrichment against Mack-Cali. Defendants moved for dismissal pursuant to CPLR 3211 (a) (1), (5) and (7), on the ground, among others, that plaintiff's claims are barred by con-

trolling New Jersey law. The motion court denied defendants' motions, holding that the action is governed by New York law. We reverse.

Both New York and New Jersey preclude real estate brokers from bringing actions for the collection of brokerage commissions in their courts without alleging and proving that such brokers were duly licensed at the time that the cause of action arose (*see* Real Property Law § 442-d; NJ Stat Ann § 45:15-3). As indicated, Equis is licensed in New York but not in New Jersey.

Determining which state's law controls in this contract case is a matter of "grouping contacts" to establish which state has " 'the most significant relationship to the transaction and the parties' " (*Zurich Ins. Co. v Shearson Lehman Hutton*, 84 NY2d 309, 317 [1994], quoting Restatement [Second] of Conflict of Laws § 188 [1]). Factors to consider are the places of the contracting, negotiation and performance of the contract, the location of the subject matter of the contract, and the domicile or place of business of the parties (*id.*).

Equis contends that the significant contacts for the transaction occurred in New York by virtue of the facts that Equis's relationships with both Mack-Cali and Tradeweb were initiated through telephone calls and correspondence from its New York office; that Equis's relationships and negotiations with Mack-Cali, through Insignia, occurred as a result of communications between itself and Insignia, both New York licensed real estate brokers; that Equis procured Tradeweb, a New York resident, for the space at Harborside and communicated with Tradeweb through its New York office; that Tradeweb was aware that it was dealing with a New York broker; and that Insignia sent the lease proposal to Equis's New York office. Equis also emphasizes New York's interest in seeing that its licensed real estate brokers are compensated.

Equis's factual allegations also demonstrate significant contacts with New Jersey. These allegations do not include the location of its reaching agreement with Tradeweb. However, Tradeweb engaged Equis to relocate it to New Jersey. According to David Itzkowitz, Equis's senior vice-president, all meetings between Equis and Tradeweb took place in New Jersey and some of the telephone conversations he had with Tradeweb's president Jim Toffey occurred while Itzkowitz was in New Jersey. Equis procured temporary space for Tradeweb in New Jersey. Equis's agreement with Mack-Cali was formed in New Jersey. The meeting that Equis arranged between Tradeweb and Mack-Cali, which Itzkowitz attended, occurred in New

Jersey. Mack-Cali's home office is in New Jersey. Of course, the subject matter of the contract, the leased office space, is located in New Jersey.

In considering "the spectrum of significant contacts" it is critical to select those "that obtain significance in the particular contract dispute" (*Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.]*, 81 NY2d 219, 226 [1993]). Traditional factors in a choice of law analysis are to be given "heavy weight" (*id.*). Since, traditionally, "contracts referring to the transfer of title to land are governed by the law of the place where the land is situated" (*Andover Realty v Western Elec. Co.*, 100 AD2d 157, 162 [1984], *affd* 64 NY2d 1006 [1985] [quoting *Stumpf v Hallahan*, 101 App Div 383, 386 (1905), *affd* 185 NY 550 (1906)]), the heaviest weight in the instant grouping of contacts analysis should be accorded to the location of the property (*see Madison Realty v Neiss*, 253 AD2d 482 [1998] [affirming finding that Florida law controlled transaction in which New York broker procured purchaser for Florida property]).

Moreover, New Jersey has an interest in seeing that brokerage services in connection with property located in that state are rendered in conformance with its laws. This Court has acknowledged that New Jersey's licensing statute precludes unlicensed brokers from recovering a commission on a transaction "any part of which occurred in that State" and that the licensing provisions "are triggered when a real estate broker performs a single act within New Jersey in connection with the rendering of brokerage services" (*Interglobal Realty Corp. v American Std.*, 174 AD2d 436, 436 [1991] [affirming finding that New Jersey licensing statute applied to underlying transaction because nonlicensed broker "escorted a potential buyer on an inspection tour of the New Jersey property"], *lv denied* 78 NY2d 858 [1991]).

In view of the fact that the instant action is based on a contract for commissions on brokerage of a transfer of interest in demised real property (*see Madison Realty,* 253 AD2d at 484) and the fact that Equis, which is not licensed as a real estate broker in New Jersey, performed at least one act, i.e., arranging and attending the meeting between the defendants in Jersey City, "within New Jersey in connection with the rendering of brokerage services" (*see Interglobal Realty Corp.,* 174 AD2d at 436), we find that the balance of the significant contacts weighs in New Jersey's favor and therefore that New Jersey law controls this action and bars Equis's claims. Concur—Nardelli, J.P., Andrias, Sullivan, Ellerin and Gonzalez, JJ.