*902 OPINION OF THE COURT
Carolyn E. Demarest, J.
Defendants move pursuant to CPLR 2221 for an order granting leave to renew that portion of the court’s decision of August 11, 2006, holding that the Pennsylvania real estate broker licensing statute does not apply, and, upon granting such leave, for an order dismissing plaintiffs’ amended complaint for failure to comply with such statute. In the event dismissal is not granted, defendants seek leave to reargue the portion of the decision denying dismissal of the complaint as against Antebi Properties, LLC and Scopus Leasing Co. and granting leave to re-serve the Antebi children, and, upon reargument, defendants request dismissal of the amended complaint as against the Antebi children, Antebi Properties, LLC and Scopus Leasing Co. Defendants filed a separate motion to strike those portions of the amended complaint that assert claims on behalf of Jimmy Marachli and Eli Shami, and for other relief.
One of the grounds upon which defendants based the original motion to dismiss was that the plaintiffs were not licensed real estate brokers in Pennsylvania, and were thus barred under both New York and Pennsylvania law from bringing an action to recover commissions.
Defendants contended in the underlying motion that New York courts have repeatedly held that when a real estate broker sells real property outside of New York in a state where he is not licensed, such real estate broker cannot collect a commission when that foreign state requires all such brokers to be licensed in that state. In his affidavit in support of the motion to dismiss defendant Morris Antebi averred that “Plaintiffs’ complaint seeks alleged commissions from the sale of real property located in the state of Pennsylvania, but fails to allege that any of the Plaintiffs are licensed to sell real estate in the state of Pennsylvania.” The complaint alleged that defendant Morris Antebi entered into a contract, titled “Confidentiality/Disclosure Agreement” with plaintiffs Klein and Dreifus in which Antebi acknowledged that Klein and Dreifus were the first to advise him of the availability and details concerning three parcels of real property located in Harrisburg, Pennsylvania. The agreement itself provides that Morris Antebi agrees that “E. Klein Realty & Kenneth S. Dreifus Realty” was the first to advise him of the availability of the property. It also provides that the agreement shall be governed by and construed by the laws of the State of New York. The complaint further alleged that Antebi *903 signed a contract entitled “Buyer’s Commission Agreement” in which he agreed to pay Klein and Dreifus a commission of 8.625% for finding the three parcels of property. The buyer’s commission agreement is on letterhead of “E. Klein Realty Co.” It provides that the undersigned buyer, Morris Antebi, agrees that if brokers “E. Klein Realty & Kenneth S. Dreifus Realty” are the brokers who brought about the sale of the premises, the brokerage commission thereof shall be a percentage of 8.625% deemed earned and due payable when title closes. Both contracts contained Morris Antebi’s signature. The complaint alleged that plaintiff Marachli is affiliated with the plaintiff Elliott Klein Realty Co. and that plaintiff Shami is affiliated with the plaintiff Dreifus. There were no allegations in the complaint concerning the location of the services rendered.
Plaintiffs’ attorney asserted in his affirmation in opposition to the motion to dismiss that while the properties were located in Pennsylvania, the services were performed in New York and that the Pennsylvania licensing statute was thus inapplicable. Plaintiffs cited Wayne A. Vandenburg Enters., Inc. v Park Dr. Manor, Inc. (678 F Supp 515 [ED Pa 1987]), in which the court held that the Pennsylvania statute did not apply to “any transaction occurring outside of Pennsylvania, even though the real estate which is the subject matter of the contract was located within the State.” (Id. at 517.)
In its August 11 decision, this court held that the Pennsylvania statute was inapplicable, since defendants had not shown that the brokerage services were rendered in Pennsylvania and had not disputed the plaintiffs’ assertion that all of the brokerage services were performed in New York. The court indicated in the decision that any deficiency in the pleadings regarding the location of the services rendered may be cured by amending the complaint, and granted leave to amend. An amended complaint was filed with the court on October 20, 2006.
Defendants now offer the affidavit of defendant Morris Antebi, in support of the motion to renew, to establish that the brokerage services were performed in Pennsylvania and thus the Pennsylvania statute should be applied and the complaint dismissed. Defendants assert that the justification for not presenting facts on the prior motion regarding the location of the services was that plaintiffs had not alleged the location of the services in the complaint, nor had they provided an affidavit from a person with knowledge alleging the location of the services. As such, defendants contend, the allegations in the *904 complaint that the property was located in Pennsylvania required application of the Pennsylvania statute.
In his affidavit defendant Antebi asserts that he had no dealings with plaintiffs within the State of New York. He contends that the services were rendered in the state of Pennsylvania. Defendant claims that the brokers met him in New Jersey on October 21, 2004, and drove him to Harrisburg, Pennsylvania, to view two real estate listings. In the car, on the way to view the listings, he signed the two brokerage agreements. The properties were shown by Gary Gardner, the owner and seller of the properties. According to Antebi, “Plaintiffs,” Mr. Gardner and defendant Antebi discussed the properties. They took a brief driving tour of Harrisburg, and then “Plaintiffs” and defendant Antebi met in a hotel lobby in Harrisburg to discuss the listings in greater detail and to finalize an offer.
In opposition to the motion to renew, plaintiffs submit an affidavit from Eliahou Shami. Shami asserts that he is a licensed real estate salesperson working with Dreifus Realty Funding, LLC, in Brooklyn, under the supervision of plaintiff Kenneth Dreifus. He asserts that he attended religious services in Brooklyn with Morris Antebi’s brother, Edmond Antebi, and learned from Edmond Antebi that Morris Antebi might be interested in purchasing real estate as an investment. Shami telephoned Morris Antebi to find out what kind of properties he was interested in. (He does not state the number or area code to which the call was made.) About the same time, Shami received a telephone call from Jamil “Jimmy” Marachli, a licensed real estate salesperson affiliated with Elliott Klein Realty Co. in Brooklyn. Marachli informed Shami of the Harrisburg properties, and told Shami he was looking for an investor for the properties. Shami telephoned Morris Antebi and described the Pennsylvania properties. Subsequently, conference calls were held with Shami, Marachli, and Morris Antebi, in which a deal to purchase the properties was discussed, including payment of a buyer’s brokerage commission to the two realty companies. During one conference call, Antebi “furnished” the Brooklyn address 2175 East 7th Street.
Shami subsequently received an offer to purchase the properties via fax to his office in Brooklyn from defendant Antebi, which Shami conveyed to Gary Gardner via telephone. (Presumably Gardner was in Harrisburg.) After another conference call with Shami, Marachli and Antebi participating, defendant Antebi faxed to Shami’s office a copy of a good faith deposit *905 check in the amount of $100,000. According to Shami, defendant Antebi was unable to come to Brooklyn to deliver a signed copy of the buyer’s brokerage commission agreement, so an appointment to see the properties was set up, at which time Antebi was to deliver a copy of the signed agreement. On October 21, 2004, Shami and Marachli met Antebi at a rest stop on the Garden State Parkway, near one of Antebi’s medical offices.
At the meeting, Antebi insisted that the brokerage commission be reduced. An agreement was reached to reduce the commission from 10% to 8.625% and they proceeded to Harrisburg. Mr. Gardner showed two of the properties and answered many of Antebi’s questions. After attending religious services and having coffee at a nearby hotel, Antebi, Shami, and Marachli headed back to the rest stop and dropped off Antebi. According to Shami, Antebi again sought a reduction in the brokerage commission and offered to pay Shami and Marachli in cash so that their employers would not know, but this was rejected. Shami and Marachli then drove back to Brooklyn. Weeks of negotiation ensued during which, from his Brooklyn office, Shami had telephone conversations with Marachli and Antebi and Gardner, and documents were faxed to Shami’s office. Ultimately, the deal appeared to have broken down and Shami located another customer who was interested in the properties. In late March 2005, Shami learned that Antebi had worked out a deal directly with Gardner, and was going to purchase the properties. Shami and Marachli were invited to Antebi’s summer house in New Jersey, at which time Antebi offered to pay a commission of $75,000. That offer was rejected.
Plaintiffs submit the affidavit of Shami as the individual at Dreifus Realty Funding, LLC with the most personal knowledge of the transaction. Defendants argue that the Shami affidavit is incompetent because Shami was dismissed from the case. Defendants had asserted in their original motion to dismiss that plaintiffs lacked standing and legal capacity to enforce the agreements, arguing that none of the named plaintiffs was a party to the agreements. The August 11 decision dismissed the complaint as against plaintiffs Jimmy Marachli and Eli Shami, for failure to plead that they were in privity with Morris Antebi, the only allegation being that plaintiffs had an agreement among themselves to share the commission, an agreement that would be unenforceable against Antebi. Plaintiffs Klein and Dreifus were granted leave to replead and amend their complaint to specifically include the allegations that they were the contract *906 ing brokers and were licensed at the time they entered into the brokerage agreement. Leave was also granted to add the correct names of the contracting parties as plaintiffs with appropriate corresponding allegations defining the identity and role of each named plaintiff.
Defendants have moved to strike those portions of the amended complaint that contain allegations concerning Shami and Marachli, contending that, since they were dismissed from the case, such allegations are improper. The amended complaint alleges that Shami and Marachli were licensed real estate brokers and/or agents in New York, that Marachli is affiliated with the plaintiff Elliott Klein Realty Co. and that plaintiff Shami is affiliated with plaintiff Dreifus. The amended complaint further alleges that plaintiffs were the procuring cause of the defendants’ purchase of the properties: “specifically, the plaintiffs Klein and Dreifus, working individually and through their sub-agents Marachli and Shami who worked under their direction and control, located those properties and introduced them to the defendants.” Plaintiffs acknowledge in a footnote to the amended complaint that all claims asserted by Marachli and Shami were dismissed, “but remain in the complaint merely for purposes of preserving appellate rights so it is clear plaintiffs have not abandoned them.” Since the amended complaint contains allegations that Shami was working under the direction and control of plaintiff Dreifus, Shami’s affidavit regarding the location of the services rendered is accepted as competent.
CPLR 2221 (e) (2) and (3) provide that a motion to renew shall be based upon new facts not offered on the prior motion that would change the prior determination and shall contain justification for the failure to present the facts on the prior motion. Since, on the underlying motion, the court had no competent affidavits, and the pleadings contained no allegations regarding the location of the brokerage services, upon the affidavits setting forth the parties’ claims as to where the brokerage services were rendered, and upon defendants’ proffered explanation of why such facts were not included in the earlier motion, the motion to renew is granted. The court notes that the amended complaint still fails to contain allegations regarding the location of the brokerage services even though the court permitted amendment to cure the deficiency in the pleading regarding that issue.
According to defendant Antebi’s affidavit, no part of the transaction took place in the State of New York. Antebi avers that he *907 never came to New York but that he signed the brokerage agreement in New Jersey or Pennsylvania en route to view the properties in Harrisburg. He asserts that discussions about the properties took place in Pennsylvania while they were looking at the properties and afterward when they had coffee at a hotel in Harrisburg. However, Antebi did fax the purchase order to the plaintiffs’ offices in Brooklyn and provided a Brooklyn address to plaintiffs.
According to the Shami affidavit, the plaintiffs were deliberately seeking to conduct the transaction wholly in New York State to prevent having to involve Pennsylvania brokers or to be subject to the Pennsylvania statute since they were not licensed in Pennsylvania. Shami and Marachli told Antebi they wanted to enter a relationship only with a customer located in New York. Defendant Antebi then provided them with a Brooklyn address, 2175 East 7th Street. When Shami and Marachli suggested a meeting in Brooklyn, however, they were told that Antebi was busy running multiple medical offices and had no time. Notably, there is no assertion by any party that Antebi resided in or had an office in Brooklyn or even in New York State. When Antebi met the New York brokers to go view the properties, he told them he would be coming from “one of his medical offices located in New Jersey.”
Shami contends that the subject brokerage activities took place in Brooklyn, including telephone conference calls, faxes and negotiations. Shami claims that the car trip to Harrisburg was made solely for the purpose of providing transportation to defendant Antebi to see the properties. Shami fails to make any mention in his affidavit of the location of the execution of the brokerage contract, except to state that it was scheduled to be signed in Brooklyn, but that defendant Antebi couldn’t come at the scheduled time.
Defendant contends that the Pennsylvania Real Estate Licensing and Registration Act (63 Pa Stat Ann § 455.101 et seq.) must be applied in this case, and that application of Pennsylvania law mandates dismissal of this action, since plaintiffs are not licensed brokers in Pennsylvania. Plaintiffs maintain that Pennsylvania law is not applicable to this case, since the brokerage services were performed in New York. Plaintiffs contend that the facts of this case fall squarely within the holding in Wayne A. Vandenberg Enters., Inc. v Park Dr. Manor, Inc. (678 F Supp 515 [1987], supra), in that no brokerage services were performed in Pennsylvania. Plaintiffs maintain that the trip to *908 Harrisburg did not include brokerage services because Shami and Marachli were merely acting as chauffeurs.
The contract provides that it is to be governed by New York law. The doctrine of comity dictates the enforcement of foreign legislation when the policies of other states are consistent with New York’s policies. (Ehrlich-Bober & Co. v University of Houston, 49 NY2d 574 [1980].) Both New York and Pennsylvania prohibit unlicensed brokers from bringing actions to recover brokerage commissions. (See Real Property Law § 442-d; 63 Pa Stat Ann § 455.101 et seq.) Both statutes serve similar, important public policy interests. In this case, the Pennsylvania licensing statute does not conflict with or offend New York law. (See e.g. Berg v Wilpon, 271 AD2d 629 [2d Dept 2000], affg 180 Misc 2d 956 [Sup Ct, Richmond County 1999]; de Winter and Loeb, Practice Commentaries, McKinney’s Cons Laws of NY, Book 49, Real Property Law § 442-d, at 371-372.) Nor does New York have a strong public policy which would preclude application of the Pennsylvania statute. Where there is no material conflict between the law of New York and that of another jurisdiction possessed of a more compelling interest, deference will be given to the law of the sister state. (See Deutsche Bank Sec., Inc. v Montana Bd. of Invs., 7 NY3d 65, 73 [2006].) Since the subject real estate is located in Pennsylvania and the affidavits establish that, among other contacts with Pennsylvania, the New York brokers traveled to Pennsylvania and made telephone calls to the seller in Pennsylvania, and as there is no conflict between New York law and Pennsylvania’s licensing statute, it is appropriate to look to the law in Pennsylvania to determine whether the plaintiffs would be precluded from recovery under Pennsylvania law.
In fact, New York precedent clearly supports giving deference to the law of the foreign jurisdiction in determining claims for commissions by New York brokers unlicensed in the states where the property is located. Applying choice of law analysis, New York courts have held that the law of the state where the land is situated is to be applied. (See TDH-Berkshire Inc. v Korff, 33 AD3d 437 [1st Dept 2006] [New Jersey law applied]; Equis Corp. v Mack-Cali Realty Corp., 6 AD3d 264 [1st Dept 2004] [New Jersey law applied]; Madison Realty v Neiss, 253 AD2d 482 [2d Dept 1998] [Florida law applied]; Interglobal Realty Corp. v American Std., 174 AD2d 436 [1st Dept 1991] [New Jersey law applied].) Thus, under New York law, designated as controlling in the agreement between the parties here, *909 the law of Pennsylvania must be applied.* The Pennsylvania Real Estate Licensing and Registration Act provides that it shall be unlawful to act in the capacity of a broker or salesperson without a license (63 Pa Stat Ann § 455.301), and that no recovery shall be had by any person for any act done or service rendered which is prohibited under the act by a person other than a licensed broker (63 Pa Stat Ann § 455.302).
Plaintiffs cite the Pennsylvania case of Wayne A. Vandenburg Enters., Inc. v Park Dr. Manor, Inc. (678 F Supp 515 [ED Pa 1987]), for the premise that the mere fact that the property is located in Pennsylvania does not require compliance with Pennsylvania’s licensing statute, unless it can be shown that the brokerage services took place within the state. In Vandenburg, the meetings in Pennsylvania were “no more than collateral and incidental services” (id. at 517) and the court found that it was the introduction of the purchaser and the lender in Illinois which appeared to be the contractual performance on which plaintiffs claim was founded. Review of the parties’ affidavits makes clear that in the instant case, there was considerably more connection with Pennsylvania than merely the location of the property. In this case, the purchaser and the seller were actually introduced to each other in Pennsylvania by the New York brokers and the brokerage contract was not signed in New York, but was apparently executed in a car in either Pennsylvania or New Jersey.
Consistent with Vandenburg, in Sun Sales Corp. v Block Land, Inc. (456 F2d 857 [3d Cir 1972]), the court held that the Pennsylvania licensing act does not apply to transactions occurring outside of Pennsylvania even though the real estate which is the subject of the transaction is located within the state. In that case, New York corporations had contracted to sell Pennsylvania land throughout the United States. They were “suing over rights contained in a New York contract, written in New York and governed by New York law, to be performed in New York and elsewhere.” (Sun Sales Corp. at 861.) The court in Sun Sales noted that no sales in Pennsylvania seem to have *910 been contemplated or attempted. Under these circumstances, the fact that they were not licensed under the Pennsylvania statute did not bar them from recovering on their claim in Pennsylvania courts. Citing Rabinowitz v Miller (51 Pa D & C 131, 134 [Ct Com Pl, Phila County 1945]) as dispositive authority on the application of 63 Pennsylvania Statutes Annotated § 446 (the predecessor of 63 Pa Stat Ann § 455.101 et seq.), the Circuit Court stated that, while applicable to nonresident brokers, the statute “was intended to cover any transaction occurring in Pennsylvania” (Sun Sales Corp. at 862-863), but not a transaction occurring outside Pennsylvania even though the property is located in Pennsylvania. In contrast to Sun Sales, in this case, not only was the real estate located in Pennsylvania, but multiple telephone calls were made to Pennsylvania, the buyer was escorted to view the properties in Pennsylvania, an offer for the properties was made in Pennsylvania, negotiations about the purchase of the property took place in Pennsylvania, discussions about the brokerage commission took place in Pennsylvania, and the transaction ultimately closed in Pennsylvania. Clearly, this was a transaction “occurring in Pennsylvania” intended to be covered by the Pennsylvania statute. Moreover, the New York brokers never dealt with the buyer, defendant Antebi, in the State of New York.
Pennsylvania authority is clear that the prohibition against recovery of commissions by unlicensed brokers is absolute. “The courts have interpreted this section as precluding any recovery of a commission, fee, or other consideration by anyone who without a license acts as a broker in a transaction involving real estate.” (Burke v Israel, 264 Pa Super 286, 290, 399 A2d 779, 781 [1979]; see Verona v Schenley Farms Co., 312 Pa 57, 167 A 317 [1933].) The Pennsylvania courts have broadly construed the definition of broker, holding that, “the mere introduction of two willing parties comes within the purview of the statute.” (Golibart v Reamer, 415 Pa Super 623, 627, 610 A2d 56, 59 [1992]; Harrison v Soffer, 221 Pa Super 275, 289 A2d 752 [1972]; see also Meyer v Gwynedd Dev. Group, Inc., 2000 Pa Super 193, 756 A2d 67 [2000].) A claim that a plaintiff did not act as a real estate broker because he did not negotiate the sale was rejected in Alford v Raschiatore (163 Pa Super 635, 63 A2d 366 [1949]).
It is plaintiffs’ contention here that they did not conduct any negotiations in Pennsylvania. However, Shami and Marachli introduced Antebi to the seller in Pennsylvania and made *911 multiple telephone calls to the seller in Pennsylvania. As the Alford court pointed out, “in probably the bulk of real estate transactions conducted by real estate agents or brokers, the agent’s part amounts to little more than finding and introducing to a party who is ready and willing to sell, a prospect who is ready, willing and able to buy.” (163 Pa Super at 639, 63 A2d at 368.)
Pennsylvania decisional law has also rejected the argument that the act is not applicable to a single, isolated transaction in which the plaintiff did not hold himself out to be a “real estate broker.” In Burke v Israel (264 Pa Super at 293, 399 A2d at 783), the Superior Court, quoting Verona v Schenley Farms Co. (312 Pa at 66, 167 A at 320), wrote, “In interpreting this provision, the Supreme Court has held ‘that every person engaged as defined . . . [i]f even for a single transaction . . . must have a license’.” It is doubtful that the Pennsylvania courts would accept plaintiffs’ argument that Shami and Marachli did not hold themselves out as brokers, but acted only as chauffeurs, while they were in Harrisburg. Moreover, under New York case law, interpreting New York’s own analogous statute governing real estate brokerage commissions (Real Property Law § 442-d), in the circumstances at bar, recovery would be precluded. (See Berg v Wilpon, 271 AD2d 629 [2000], supra.)
Pennsylvania courts have acknowledged that application of the statute may seem harsh and unjust in that it may deprive plaintiffs from receiving money duly earned, but they are constrained by the statutory ban. “Injustice is the hallmark of the brokers’ licensing acts.” (Burke v Israel, 264 Pa Super 286, 294, 399 A2d 779, 783 [1979], quoting Comment, Recovery of Commissions by Unlicensed Real Estate Brokers, 80 Dick L Rev 500, 524 [1976]; see also Wilkins v Heebner, 331 Pa Super 491, 500, 480 A2d 1141, 1146 [1984].) This court notes that Pennsylvania has a reciprocal provision for out-of-state residents to qualify for a license in Pennsylvania and avoid the prohibition of the act. (63 Pa Stat Ann § 455.602.) Moreover, a broker licensed in another state may receive commissions through the agency of a cooperating Pennsylvania broker. (See Gold & Co., Inc. v Northeast Theater Corp., 281 Pa Super 69, 421 A2d 1151 [1980].) Plaintiffs were not, therefore, without an accepted mechanism for compensation. In fact, plaintiffs herein did exactly what is sought to be avoided by the licensing requirements: without being licensed in the foreign jurisdiction, they reached into another state to solicit a buyer for property in a *912 third state, the seller of which they also improperly solicited from New York, knowing from the outset that they were not licensed in either jurisdiction. Plaintiffs’ hands are therefore no cleaner than those of the defendant who has sought to deprive them of their commission.
Having granted defendants’ motion for leave to renew, and upon consideration of the affidavits from both sides presenting facts not offered to the court on the prior motion, this court finds that recovery of brokerage commissions by plaintiffs herein is prohibited under both the Pennsylvania statute and the law of New York. Accordingly, plaintiffs’ amended complaint is dismissed in its entirety. Defendants’ motion to strike portions of the amended complaint and for dismissal of the amended complaint for insufficient service is therefore moot.

 The court notes that defendant Antebi was located in New Jersey when Shami and Marachli picked him up, apparently near one of his medical offices, and that the brokerage commission agreement may have been signed in New Jersey. New Jersey law unequivocally prohibits recovery of commissions by unlicensed brokers if even a single act was performed in New Jersey, including escorting a potential buyer on an inspection tour of the property. (Interglobal Realty Corp. v American Std., supra; Tanenbaum v Sylvan Bldrs., Inc., 29 NJ 63, 148 A2d 176 [1959].)